EXHIBIT J

 **Jackson Housing Authority**

Mark C. Reid
Executive Director

125 Preston St. P.O. Box 3188
Jackson, TN 38303-0188

731-422-1671 Fax 731-425-4605

March 3, 2021

BETTER WORLD PROPERTIES
PO BOX 10475
JACKSON TN 38308

SUBJECT:
JESSICA MARTIN
33 CHICKASAW DR
JACKSON TN 38305

Dear Landlord:

On 3/1/2021 the subject unit was inspected for rental assistance under the Section 8 Rental Assistance Program.  Your unit passed this inspection.

The total contract rent for this unit is $983 per month

NOTE: There can be NO additional money added to this total by the tenant or a representative of the tenant!

If you agree to accept this rent, and desire to enter into a contract please contact this office within 5 days from receipt of this letter 731-422-1671 ext. 119.

Sincerely,
lSterling

*'Helping families live better'*

EXHIBIT 2

## Cassie Jones

**From:** Ann Ewing <annkewingbwe@gmail.com>
**Sent:** Tuesday, January 11, 2022 3:00 PM
**To:** Cassie Jones
**Subject:** Jessica Martin 33 Chickasaw Drive

Hi Miss Cassie -

To confirm our conversation this morning, we sent notice to Ms. Martin and to you on December 30, 2021 that we will not be renewing her lease when it expires on 2/28/22.

The current rent is $983 per month.  Our costs have significantly increased since we signed the lease with her on 3/10/21.  We are paying more for materials, labor, property insurance, liability insurance, utilities and all the other bills that come with running a company.

This forces us to raise rents as the leases renew.  A $50 per month increase will not be sufficient - we will be raising the rent to between $1,100 to $1,200 per month.  Ms. Martin was one of several tenants who were sent letters on December 30, and we wish her the best in her future home.

Best regards,

Ann Ewing
Better World Properties
731-467-1244

EXHIBIT 3

## CERTIFICATION OF OWNER/ TENANT RELATIONSHIP

I accordance with Federal Regulation 982.306, effective June 17, 1998, as owner of the unit at _33 Chickasaw Drive_ to
                                                    *(address)*    Jackson, TN 38305

be leased to _Jessica Martin_, I certify
                      *(family)*

that I am not the "parent, child, grandparent, grandchild, sister of brother" of any member of the family". I further state this to be true of all owners of subject unit.

_Ann Ewing for BWP_
( Owner)

_____
(Owner)

_3 / 10 / 2021_
    Date

EXHIBIT 4

## Cassie Jones

| | |
|---|---|
| **From:** | Ann Ewing <annkewingbwe@gmail.com> |
| **Sent:** | Tuesday, January 25, 2022 11:23 AM |
| **To:** | Cassie Jones |
| **Subject:** | Jessica Martin |

Good morning Miss Cassie -

This email confirms that Jessica Martin at 33 Chickasaw Drive is current on her payments to Better World Properties.

Best regards,

Ann Ewing
Better World Properties
731-467-1244

1

**EXHIBIT 5**

## Jackson Housing Authority

### Mark C. Reid - Executive Director

125 Preston Street - P.O. Box 3188
Jackson, TN 38303-0188
731-422-1671   Fax: 731-425-4605

### Rent Change Notice

03/10/2021

Jessica R. Martin                                    Resident ID:   000002117
33 Chickasaw Dr.                                     Voucher #:        113901
Jackson TN 38305

Dear Jessica R. Martin:

An examination of your housing assistance has been completed.  The following is the determination:

| | |
|---|---|
| Total Contract Rent | 983.00 |
| Total Resident Rent | 0.00 |
| Housing Assistance Payments | 983.00 |
| Utility Reimbursement | 126.00 |

**Effective Date: 03/10/2021**

If you have any questions regarding this determination, please write to or call our office.  If you find the calculation to be in error, you have the right to request (in writing) an informal hearing with ten (10) days of the date of this notice.

Sincerely,

CC
Better World Enterprises                            Owner ID:      V001008
P.O. Box 10475
Jackson TN 38308

 **Jackson Housing Authority**

Mark C. Reid
Executive Director

125 Preston St. P.O. Box 3188
Jackson, TN 38303-0188

731-422-1671 Fax 731-425-4605

March 3, 2021

BETTER WORLD PROPERTIES
PO BOX 10475
JACKSON TN 38308

SUBJECT:
JESSICA MARTIN
33 CHICKASAW DR
JACKSON TN 38305

Dear Landlord:

On 3/1/2021 the subject unit was inspected for rental assistance under the Section 8 Rental Assistance Program. Your unit passed this inspection.

The total contract rent for this unit is $983 per month

NOTE: There can be NO additional money added to this total by the tenant or a representative of the tenant!

If you agree to accept this rent, and desire to enter into a contract please contact this office within 5 days from receipt of this letter 731-422-1671 ext. 119.

Sincerely,
ISterling

*'Helping families live better'*

**Cassie Jones**

| | |
|---|---|
| **From:** | Ann Ewing <annkewingbwe@gmail.com> |
| **Sent:** | Tuesday, January 11, 2022 3:00 PM |
| **To:** | Cassie Jones |
| **Subject:** | Jessica Martin 33 Chickasaw Drive |

Hi Miss Cassie -

To confirm our conversation this morning, we sent notice to Ms. Martin and to you on December 30, 2021 that we will not be renewing her lease when it expires on 2/28/22.

The current rent is $983 per month.  Our costs have significantly increased since we signed the lease with her on 3/10/21.  We are paying more for materials, labor, property insurance, liability insurance, utilities and all the other bills that come with running a company.

This forces us to raise rents as the leases renew.  A $50 per month increase will not be sufficient - we will be raising the rent to between $1,100 to $1,200 per month.  Ms. Martin was one of several tenants who were sent letters on December 30, and we wish her the best in her future home.

Best regards,

Ann Ewing
Better World Properties
731-467-1244

# CERTIFICATION OF OWNER/TENANT RELATIONSHIP

I accordance with Federal Regulation 982.306, effective June 17, 1998, as owner of the unit at <u>33 Chickasaw Drive</u> to
<i>(address)</i>

<u>Jackson, TN 38305</u>

be leased to <u>Jessica Martin</u>, I certify
<i>(family)</i>

that I am not the "parent, child, grandparent, grandchild, sister of brother" of any member of the family". I further state this to be true of all owners of subject unit.

<u>Ann Ewing for BWP</u>
<i>( Owner)</i>

_____
<i>(Owner)</i>

<u>3/10/2021</u>
<i>Date</i>

## Cassie Jones

**From:**          Ann Ewing <annkewingbwe@gmail.com>
**Sent:**          Tuesday, January 25, 2022 11:23 AM
**To:**            Cassie Jones
**Subject:**       Jessica Martin

Good morning Miss Cassie -

This email confirms that Jessica Martin at 33 Chickasaw Drive is current on her payments to Better World Properties.

Best regards,

Ann Ewing
Better World Properties
731-467-1244

1

# Jackson Housing Authority

### Mark C. Reid - Executive Director

125 Preston Street - P.O. Box 3188
Jackson, TN  38303-0188
731-422-1671   Fax: 731-425-4605

### Rent Change Notice

03/10/2021

Jessica R. Martin                                           Resident ID:   000002117
33 Chickasaw Dr.                                           Voucher #:        113901
Jackson TN 38305

Dear Jessica R. Martin:

An examination of your housing assistance has been completed.  The following is the determination:

| | |
|---|---|
| Total Contract Rent | 983.00 |
| Total Resident Rent | 0.00 |
| Housing Assistance Payments | 983.00 |
| Utility Reimbursement | 126.00 |

**Effective Date: 03/10/2021**

If you have any questions regarding this determination, please write to or call our office.  If you find the calculation to be in error, you have the right to request (in writing) an informal hearing with ten (10) days of the date of this notice.

Sincerely,

CC
Better World Enterprises                                  Owner ID:        V001008
P.O. Box 10475
Jackson TN 38308

| Head of household name **Martin** | Social Security Number XXX-XX-3733 | Date modified (mm/dd/yyyy) 03/10/2021 |

# Family Report

**U.S. Department of Housing and Urban Development**

OMB Approval Number 2577-0083

Office of Public and Indian Housing

## 1. Agency

| | | | |
|---|---|---|---|
| 1a. | Agency name **Jackson Housing Authority** | | 1a. |
| 1b. | PHA code | [ T ][ N ][ 0 ][ 0 ][ 7 ] | 1b. |
| 1c. | Program | P=Public Housing, CE= Sec. 8 Certificates, VO= Sec. 8 Vouchers, MR= Sec. 8 Mod Rehab    [ V ][ O ] | 1c. |
| 1d. | Project number (Public Housing only) | [ ][ ][ ][ ][ ][ ][ ] Suffix: [ ][ ][ ] | 1d. |
| 1e. | Building number (Public Housing only) | [ ][ ][ ][ ][ ][ ] | 1e. |
| 1f. | Building entrance number (Public Housing only) | [ ][ ][ ] | 1f. |
| 1g. | Unit number (Public Housing only) | [ ][ ][ ][ ][ ][ ][ ][ ] | 1g. |

## 2. Action

| | | | |
|---|---|---|---|
| 2a. | Type of action | 1 | 2a. |
| 2b. | Effective date (mm/dd/yyyy) of action | 03/10/2021 | 2b. |
| 2c. | Correction? (Y or N) | N | 2c. |
| 2d. | If correction: (check primary reason)   [ ] Family correction of income   [ ] PHA correction of family income<br>[ ] Family correction (non-income)   [ ] PHA correction (non-income) | | |
| 2h. | Date (mm/dd/yyyy) of admission to program | 03/10/2021 | 2h. |
| 2i. | Projected effective date (mm/dd/yyyy) of next reexamination | 03/01/2022 | 2i. |
| 2j. | Projected date (mm/dd/yyyy) of next flat rent annual update (Public Housing flat rent only) | | 2j. |
| 2k. | FSS participation now or in the last year? (Y or N) | Y | 2k. |
| 2m. | Special program: (vouchers only) (check only one)   [ ] Enhanced Voucher   [ ] Welfare to Work Voucher | | |
| 2n. | Other special programs:  Number 01 | | 2n. |
| 2n. | Other special programs:  Number 02 | | 2n. |
| 2q. | PHA use only | | 2q. |
| 2r. | PHA use only | | 2r. |
| 2s. | PHA use only | | 2s. |
| 2t. | PHA use only | | 2t. |
| 2u. | PHA use only | | 2u. |

| **2a. Type of action codes** | | |
|---|---|---|
| 1 = New Admission | 6 = End Participation | 11 = Expiration of Voucher (VO only) |
| 2 = Annual Reexamination | 7 = Other Change of Unit | 12 = Flat Rent Annual Update (PH only) |
| 3 = Interim Reexamination | 8 = FSS/WtW Addendum Only | 13 = Annual HQS Inspection Only (S8 only) |
| 4 = Portability Move-in (VO only) | 9 = Annual Reexamination Searching (VO only) | 14 = Historical Adjustment |
| 5 = Portability Move-out (VO only) | 10 = Issuance of Voucher (VO only) | 15 = Void |

| Head of household name **Martin** | Social Security Number **XXX-XX-3733** | Date modified (mm/dd/yyyy) **03/10/2021** |
|---|---|---|

## 3. Household

| 3a. Head of Household Member number 01 | 3b. Last name & Sr., Jr. etc. **Martin** | | 3c. First name **Jessica** | 3d. MI **R** | 3e. Date of birth **10/24/1989** | 3f. Age on effective date of action **31** |
|---|---|---|---|---|---|---|
| | 3g. Sex **F** | 3h. Relation **H** | 3i. Citizenship **EC** | 3j. Disability (Y or N) **N** | 3k. Race [ ] 1. [✓] 2. [ ] 3. [ ] 4. [ ] 5. | 3m. Ethnicity **2** |
| | 3n. Social Security Number **XXX-XX-3733** | | 3p. Alien Registration Number A- | | 3q. Meeting community service or self-sufficiency requirement? (PH only) | |

| 3a. Member number 02 | 3b. Last name & Sr., Jr. etc. **Martin** | | 3c. First name **Karson** | 3d. MI | 3e. Date of birth **11/08/2015** | 3f. Age on effective date of action **5** |
|---|---|---|---|---|---|---|
| | 3g. Sex **M** | 3h. Relation **Y** | 3i. Citizenship **EC** | 3j. Disability (Y or N) **N** | 3k. Race [ ] 1. [✓] 2. [ ] 3. [ ] 4. [ ] 5. | 3m. Ethnicity **2** |
| | 3n. Social Security Number **XXX-XX-1295** | | 3p. Alien Registration Number A- | | 3q. Meeting community service or self-sufficiency requirement? (PH only) | |

| 3a. Member number 03 | 3b. Last name & Sr., Jr. etc. **Martin** | | 3c. First name **Karter** | 3d. MI **C** | 3e. Date of birth **01/22/2010** | 3f. Age on effective date of action **11** |
|---|---|---|---|---|---|---|
| | 3g. Sex **F** | 3h. Relation **Y** | 3i. Citizenship **EC** | 3j. Disability (Y or N) **N** | 3k. Race [ ] 1. [✓] 2. [ ] 3. [ ] 4. [ ] 5. | 3m. Ethnicity **2** |
| | 3n. Social Security Number **XXX-XX-5141** | | 3p. Alien Registration Number A- | | 3q. Meeting community service or self-sufficiency requirement? (PH only) | |

| 3a. Member number 04 | 3b. Last name & Sr., Jr. etc. | | 3c. First name | 3d. MI | 3e. Date of birth | 3f. Age on effective date of action |
|---|---|---|---|---|---|---|
| | 3g. Sex | 3h. Relation | 3i. Citizenship | 3j. Disability (Y or N) | 3k. Race [ ] 1. [ ] 2. [ ] 3. [ ] 4. [ ] 5. | 3m. Ethnicity |
| | 3n. Social Security Number **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** | | 3p. Alien Registration Number A- | | 3q. Meeting community service or self-sufficiency requirement? (PH only) | |

Members 05-08 handwritten: Jessica Martin  4109-953-4817

**3h. Relation codes:** H = head, S = spouse, K = co-head, F = foster child/foster Adult, Y = other youth under 18, E = full-time student 18+, L = live-in aide, A = other adult
**3i. Citizenship codes:** EC = eligible citizen, EN = eligible noncitizen, IN = ineligible noncitizen, PV = pending verification
**3k. Race:** 1 = White, 2 = Black/African American, 3 = American Indian/Alaska Native, 4 = Asian, 5 = Native Hawaiian/Other Pacific Islander
**3m. Ethnicity codes:** 1 = Hispanic or Latino, 2 = not Hispanic or Latino
**3q. Community service or self-sufficiency codes:** 1 = yes, 2 = no, 3 = pending, 4 = exempt, 5 = n/a
**3u. Family subsidy status codes:** C = qualified for continuation of full assistance, E = eligible for full assistance, F = eligible for full assistance pending verification of status, P = prorated assistance

| Head of household name **Martin** | Social Security Number XXX-XX-3733 | Date modified (mm/dd/yyyy) 03/10/2021 |
|---|---|---|

| 3a. Member number | 3b. Last name & Sr., Jr. etc. | | | 3c. First name | 3d. MI | 3e. Date of birth | 3f. Age on effective date of action |
|---|---|---|---|---|---|---|---|
| | 3g. Sex | 3h. Relation | 3i. Citizenship | 3j. Disability (Y or N) | 3k. Race [ ]1. [ ]2. [ ]3. [ ]4. [ ]5. | | 3m. Ethnicity |
| | 3n. Social Security Number 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 | | | 3p. Alien Registration Number A- | 3q. Meeting community service or self-sufficiency requirement? (PH only) | | |

| 3a. Member number | 3b. Last name & Sr., Jr. etc. | | | 3c. First name | 3d. MI | 3e. Date of birth | 3f. Age on effective date of action |
|---|---|---|---|---|---|---|---|
| | 3g. Sex | 3h. Relation | 3i. Citizenship | 3j. Disability (Y or N) | 3k. Race [ ]1. [ ]2. [ ]3. [ ]4. [ ]5. | | 3m. Ethnicity |
| | 3n. Social Security Number 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 | | | 3p. Alien Registration Number A- | 3q. Meeting community service or self-sufficiency requirement? (PH only) | | |

| 3a. Member number | 3b. Last name & Sr., Jr. etc. | | | 3c. First name | 3d. MI | 3e. Date of birth | 3f. Age on effective date of action |
|---|---|---|---|---|---|---|---|
| | 3g. Sex | 3h. Relation | 3i. Citizenship | 3j. Disability (Y or N) | 3k. Race [ ]1. [ ]2. [ ]3. [ ]4. [ ]5. | | 3m. Ethnicity |
| | 3n. Social Security Number 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 | | | 3p. Alien Registration Number A- | 3q. Meeting community service or self-sufficiency requirement? (PH only) | | |

| 3a. Member number | 3b. Last name & Sr., Jr. etc. | | | 3c. First name | 3d. MI | 3e. Date of birth | 3f. Age on effective date of action |
|---|---|---|---|---|---|---|---|
| | 3g. Sex | 3h. Relation | 3i. Citizenship | 3j. Disability (Y or N) | 3k. Race [ ]1. [ ]2. [ ]3. [ ]4. [ ]5. | | 3m. Ethnicity |
| | 3n. Social Security Number 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 | | | 3p. Alien Registration Number A- | 3q. Meeting community service or self-sufficiency requirement? (PH only) | | |

| 3a. Member number | 3b. Last name & Sr., Jr. etc. | | | 3c. First name | 3d. MI | 3e. Date of birth | 3f. Age on effective date of action |
|---|---|---|---|---|---|---|---|
| | 3g. Sex | 3h. Relation | 3i. Citizenship | 3j. Disability (Y or N) | 3k. Race [ ]1. [ ]2. [ ]3. [ ]4. [ ]5. | | 3m. Ethnicity |
| | 3n. Social Security Number 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 | | | 3p. Alien Registration Number A- | 3q. Meeting community service or self-sufficiency requirement? (PH only) | | |

| 3a. Member number | 3b. Last name & Sr., Jr. etc. | | | 3c. First name | 3d. MI | 3e. Date of birth | 3f. Age on effective date of action |
|---|---|---|---|---|---|---|---|
| | 3g. Sex | 3h. Relation | 3i. Citizenship | 3j. Disability (Y or N) | 3k. Race [ ]1. [ ]2. [ ]3. [ ]4. [ ]5. | | 3m. Ethnicity |
| | 3n. Social Security Number 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 | | | 3p. Alien Registration Number A- | 3q. Meeting community service or self-sufficiency requirement? (PH only) | | |

| 3a. Member number | 3b. Last name & Sr., Jr. etc. | | | 3c. First name | 3d. MI | 3e. Date of birth | 3f. Age on effective date of action |
|---|---|---|---|---|---|---|---|
| | 3g. Sex | 3h. Relation | 3i. Citizenship | 3j. Disability (Y or N) | 3k. Race [ ]1. [ ]2. [ ]3. [ ]4. [ ]5. | | 3m. Ethnicity |
| | 3n. Social Security Number 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 | | | 3p. Alien Registration Number A- | 3q. Meeting community service or self-sufficiency requirement? (PH only) | | |

| 3a. Member number | 3b. Last name & Sr., Jr. etc. | | | 3c. First name | 3d. MI | 3e. Date of birth | 3f. Age on effective date of action |
|---|---|---|---|---|---|---|---|
| | 3g. Sex | 3h. Relation | 3i. Citizenship | 3j. Disability (Y or N) | 3k. Race [ ]1. [ ]2. [ ]3. [ ]4. [ ]5. | | 3m. Ethnicity |
| | 3n. Social Security Number 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 | | | 3p. Alien Registration Number A- | 3q. Meeting community service or self-sufficiency requirement? (PH only) | | |

| 3t. | Total number in household | 3 | 3t. |
|---|---|---|---|
| 3u. | Family subsidy status under Noncitizens Rule | E | 3u. |
| 3v. | Eligibility effective date (mm/dd/yyyy) if qualified for continuation of full assistance (3u=C) | | 3v. |
| 3w. | If new head of household, former head of household's SSN | | 3w. |

| 3h. Relation codes: | 3k. Race codes: | 3q. Community service or self-sufficiency codes: |
|---|---|---|
| H = head<br>S = spouse<br>K = co-head<br>F = foster child/foster Adult<br>Y = other youth under 18<br>E = full-time student 18+<br>L = live-in aide<br>A = other adult | 1 = White<br>2 = Black/African American<br>3 = American Indian/Alaska Native<br>4 = Asian<br>5 = Native Hawaiian/Other Pacific Islander | 1 = yes<br>2 = no<br>3 = pending<br>4 = exempt<br>5 = n/a |
| **3i. Citizenship codes:**<br>EC = eligible citizen<br>EN = eligible noncitizen<br>IN = ineligible noncitizen<br>PV = pending verification | **3m. Ethnicity codes:**<br>1 = Hispanic or Latino<br>2 = not Hispanic or Latino | **3u. Family subsidy status codes:**<br>C = qualified for continuation of full assistance<br>E = eligible for full assistance<br>F = eligible for full assistance pending verification of status<br>P = prorated assistance |

| Head of household name **Martin** | Social Security Number **XXX-XX-3733** | Date modified (mm/dd/yyyy) **03/10/2021** |

## 4. Background at Admission

| | | | |
|---|---|---|---|
| 4a. | Date (mm/dd/yyyy) entered waiting list | **11/01/2010** | 4a. |
| 4b. | ZIP code before admission | **38301** | 4b. |
| 4c. | Homeless at admission? (Y or N) | N | 4c. |
| 4d. | Does family qualify for admission over the very low-income limit? (vouchers only) (Y or N) | N | 4d. |
| 4e. | Continuously assisted under the 1937 Housing Act? (Y or N) | N | 4e. |
| 4f. | Is there a HUD approved income targeting disregard? (Y or N) | N | 4f. |

## 5. Unit to be Occupied on Effective Date of Action

| | | | | | |
|---|---|---|---|---|---|
| 5a. | Unit address | | | | |
| | Number and street **33 Chickasaw Dr.** | | | Apt. | |
| | City **Jackson** | State **TN** | ZIP code (+4) **38305** | | |
| 5b. | Is mailing address same as unit address? (Y or N) (if yes, skip to 5d) | | | Y | 5b. |
| 5c. | Family's mailing address | | | | |
| | Number and street | | | Apt. | |
| | City | State | ZIP code (+4) | | |
| 5d. | Number of bedrooms in unit | | | 3 | 5d. |
| 5e. | Has the PHA identified this unit as an accessible unit? (Public Housing only) (Y or N) | | | | 5e. |
| 5f. | Has the family requested accessibility features? (Public Housing only) (Y or N) (if no, skip to next section) | | | | 5f. |
| 5g. | Has the family received requested accessibility features? (Public Housing only) | | | | |
| | [ ] a. Yes, fully    [ ] b. Yes, partially    [ ] c. No, not at all    [ ] d. Action pending (can be checked in combination with b. or c.) | | | | |
| 5h. | Date (mm/dd/yyyy) unit last passed HQS inspection (Section 8 only, except Homeownership and Project-based Vouchers) | | | 03/01/2021 | 5h. |
| 5i. | Date (mm/dd/yyyy) of last annual HQS inspection (Section 8 only, except Homeownership and Project-based Vouchers) | | | 03/01/2021 | 5i. |
| 5j. | Year (yyyy) unit was built (Section 8 only) | | | 1955 | 5j. |
| 5k. | Structure type (check only one) (Section 8 only) | | | | |
| | [✓] Single family detached         [ ] Semi-detached              [ ] Rowhouse/townhouse | | | | |
| | [ ] Low-rise                       [ ] High rise with elevator     [ ] Manufactured home | | | | |

| Head of household name **Martin** | Social Security Number **XXX-XX-3733** | Date modified (mm/dd/yyyy) **03/10/2021** |

## 6. Assets

| 6a. Family member name | No. | 6b. Type of asset | 6c. Calculation (PHA use) | 6d. Cash value of asset | 6e. Anticipated Income |
|---|---|---|---|---|---|
| | | | | $ | $ |
| | | | | $ | $ |
| | | | | $ | $ |
| | | | | $ | $ |
| | | | | $ | $ |
| | | | | $ | $ |
| | | | | $ | $ |
| | | | | $ | $ |

| 6f, 6g. Column totals | | | | $ 0                    6f. | $ 0            6g. |
|---|---|---|---|---|---|

| 6h. | Passbook rate (written as decimal) | 0. 0006       6h. |
|---|---|---|

| 6i. | Imputed asset income: 6f X 6h (if 6f is $5,000 or less, put 0) | $ 0          6i. |
|---|---|---|

| 6j. | Final asset income: larger of 6g or 6i | $ 0          6j. |
|---|---|---|

## 7. Income

| 7a. Family member name | No. | 7b. Income Code | 7c. Calculation (PHA use) | 7d. Dollars per year | 7e. Income exclusions | 7f. Income after exclusions (7d minus 7e) |
|---|---|---|---|---|---|---|
| Jessica | 01 | G | | $ 0 | $ 0 | $ 0 |
| Jessica | 01 | C | | $ 4314 | $ 0 | $ 4314 |
| | | | | $ | $ | $ |
| | | | | $ | $ | $ |
| | | | | $ | $ | $ |
| | | | | $ | $ | $ |
| | | | | $ | $ | $ |
| | | | | $ | $ | $ |
| | | | | $ | $ | $ |
| | | | | $ | $ | $ |
| | | | | $ | $ | $ |
| | | | | $ | $ | $ |

| 7g. | Column total | | | | | $ 4314        7g. |
|---|---|---|---|---|---|---|

7h.     Reserved

| 7i. | Total annual income: 6j + 7g | $ 4314      7i. |
|---|---|---|

| **7b: Income Codes** | **Welfare:** | **Other Income Sources:** |
|---|---|---|
| **Wages:** | G = general assistance | C = child support |
| B = own business | IW = annual imputed welfare income | E = medical reimbursement |
| F = federal wage | T = TANF assistance | I = Indian trust/per capita |
| HA = PHA wage | | N = other nonwage sources |
| M = military pay | **SS/SSI/Pensions:** | U = unemployment benefits |
| W = other wage | P = pension | |
| | S = SSI | |
| | SS = Social Security | |

| Head of household name **Martin** | Social Security Number **XXX-XX-3733** | Date modified (mm/dd/yyyy) **03/10/2021** |

## 8. Expected Income Per Year

| | | | | | |
|---|---|---|---|---|---|
| 8a. | Total annual income: copy from 7i | | | $ 4314 | 8a. |
| **Permissible Deductions (Public Housing Only. If Section 8, Skip to 8f or 8q)** | | | | | |
| 8b. | Family member name | No. | 8c.   Type of permissible deduction | 8d.   Amount | |
| | | | | $ | |
| | | | | $ | |
| | | | | $ | |
| | | | | $ | |
| | | | | $ | |
| | | | | $ | |
| | | | | $ | |
| 8e. | Total permissible deductions  (sum of column 8d) | | | $ 0 | 8e. |
| **If head/spouse/co-head is under 62 and no family member is disabled, skip to 8q** | | | | | |
| 8f. | Medical/disability threshold: 8a X 0.03 | | | $ 0 | 8f. |
| 8g. | Total annual unreimbursed disability assistance expense (if no disability expenses, skip to 8k) | | | $ 0 | 8g. |
| 8h. | Maximum disability allowance: If 8g minus 8f is positive or zero, put amount | | | $ 0 | 8h. |
| | | If negative and head/spouse/co-head is under 62 and not disabled, put 0 | | $ | 8h. |
| | | If negative and head/spouse/co-head is elderly or disabled, copy from 8g | | $ | 8h. |
| 8i. | Earnings in 7d made possible by disability assistance expense | | | $ 0 | 8i. |
| 8j. | Allowable disability assistance expense: lower of 8h or 8i (if 8g is less than 8f and head/spouse/co-head elderly or disabled, copy from 8h) | | | $ 0 | 8j. |
| 8k. | Total annual unreimbursed medical expenses (if head/spouse/co-head under 62 and not disabled, put 0) | | | $ 0 | 8k. |
| 8m. | Total annual disability assistance and medical expense: 8j + 8k (if no disability expenses, copy from 8k) | | | $ 0 | 8m. |
| 8n. | Medical/disability assistance allowance: | If no disability assistance expenses or if 8g is less than 8f, put 8m minus 8f (if 8m minus 8f is negative, put zero) | | $ 0 | 8n. |
| | | If disability assistance expenses and 8g is greater than or equal to 8f, copy from 8m | | $ | 8n. |
| 8p. | Elderly/disability allowance (default = $400) | | | $ 0 | 8p. |
| 8q. | Number of dependents (people under 18, or with disability, or full-time student. Do not count head of household, spouse, co-head, foster child/adult, or live-in aide.) | | | $ 2 | 8q. |
| 8r. | Allowance per dependent (default = $480) | | | $ 480 | 8r. |
| 8s. | Dependent allowance: 8q X 8r | | | $ 960 | 8s. |
| 8t. | Total annual unreimbursed childcare costs | | | $ 0 | 8t. |
| 8x. | Total allowances: 8e + 8n + 8p + 8s + 8t | | | $ 960 | 8x. |
| 8y. | Adjusted annual income: 8a minus 8x (if 8x is larger, put 0) | | | $ 3354 | 8y. |

| Head of household name **Martin** | Social Security Number **XXX-XX-3733** | Date modified (mm/dd/yyyy) **03/10/2021** |

## 9. Total Tenant Payment (TTP)

| | | | |
|-----|----------------------------------------------------------------|--------|-----|
| 9a. | Total monthly income: 8a ÷ 12 | $ 360 | 9a. |
| 9c. | TTP if based on annual income: 9a X 0.10 | $ 36 | 9c. |
| 9d. | Adjusted monthly income: 8y ÷ 12 | $ 280 | 9d. |
| 9e. | Percentage of adjusted monthly income: use 30% for Section 8 | 30 | 9e. |
| 9f. | TTP if based on adjusted annual income: (9d X 9e) ÷ 100 | $ 84 | 9f. |
| 9g. | Welfare rent per month (if none, put 0) | $ 0 | 9g. |
| 9h. | Minimum rent (if waived, put 0) | $ 50 | 9h. |
| 9i. | Enhanced Voucher minimum rent | $ 0 | 9i. |
| 9j. | TTP, highest of lines 9c, 9f, 9g, 9h, or 9i | $ 84 | 9j. |
| 9k. | Most recent TTP | $ 0 | 9k. |
| 9m. | Qualify for minimum rent hardship exemption? (Y or N) | $ N | 9m. |

| Head of household name  **Martin** | Social Security Number  **XXX-XX-3733** | Date modified (mm/dd/yyyy)  **03/10/2021** |

## 12. Housing Choice Vouchers: Tenant Based Vouchers

| | | | |
|---|---|---|---|
| 12a. | Number of bedrooms on Voucher | 3 | 12a. |
| 12b. | Is family now moving to this unit? (Y or N) | Y | 12b. |
| 12c. | Does the family qualify as a Hard to House family? (Y or N) | N | 12c. |
| 12d. | Did family move into your PHA jurisdiction under portability? (Y or N) (if no, skip to 12g) | N | 12d. |
| 12e. | Cost billed per month (put 0 if absorbed) | $ 0 | 12e. |
| 12f. | PHA code billed | | 12f. |
| 12g. | Housing type:        [  ] Group Home (prorate gross rent)        [  ] Own manufactured home, lease space        [  ] SRO: 1 room occupied by 1 person | | |
| 12h. | Owner name  **Better World Enterprises** | | 12h. |
| 12i. | Owner TIN/SSN | XXXXX6605 | 12i. |
| 12j. | Payment standard for the family | $ 1193 | 12j. |
| 12k. | Rent to owner | $ 983 | 12k. |
| 12m. | Utility allowance, if any | $ 254 | 12m. |
| 12p. | Gross rent of unit: 12k + 12m (or Space Rent) | $ 1237 | 12p. |
| 12q. | Lower of 12j or 12p | $ 1193 | 12q. |
| 12r. | TTP: copy from 9j | $ 84 | 12r. |
| 12s. | Total HAP: 12q minus 12r | $ 1109 | 12s. |

### Rent Calculation (if prorated rent, skip to 12ab)

| | | | |
|---|---|---|---|
| 12t. | Total family share: 12p minus 12s | $ 128 | 12t. |
| 12u. | HAP to owner: lower of 12k or 12s | $ 983 | 12u. |
| 12v. | Tenant rent to owner: 12k minus 12u | $ 0 | 12v. |
| 12w. | Utility reimbursement to family: 12s minus 12u, but do not exceed 12m | $ 126 | 12w. |

### Prorated Rent Calculation

| | | | | |
|---|---|---|---|---|
| 12ab. | Normal total HAP: copy from 12s, but do not exceed 12p | | $ 0 | 12ab. |
| 12ac. | Total number eligible | | 0 | 12ac. |
| 12ad. | Total number in family | | 0 | 12ad. |
| 12ae. | Proration percentage: 12ac ÷ 12ad | | $ 0 | 12ae. |
| 12af. | Prorated total HAP: 12ab X 12ae | | $ 0 | 12af. |
| 12ag. | Mixed family total family contribution: 12p minus 12af | | $ 0 | 12ag. |
| 12ah. | Utility allowance: copy from 12m | | $ 254 | 12ah. |
| 12ai. | Mixed family tenant rent to owner: 12ag minus 12ah | If positive or 0, put tenant rent | $ 0 | 12ai. |
| | | If negative, credit tenant | $ | 12ai. |
| 12aj. | Prorated HAP to owner: 12k minus 12ai. If 12ai is negative, put 12k | | $ 0 | 12aj. |

| Head of household name **Martin** | Social Security Number **XXX-XX-3733** | Date modified (mm/dd/yyyy) **03/10/2021** |

## 17. Family Self-Sufficiency (FSS)/ Welfare to Work (WtW) Voucher Addendum

| 17a. | Participate in special programs? (check all that apply) | [✓] FSS | [ ] Welfare to Work Voucher | |
|---|---|---|---|---|
| 17b. | FSS report category: (check no more than one) | [ ] Enrollment | [ ] Progress | [✓] Exit |
| 17c. | FSS effective date (mm/dd/yyyy) of action | | | 07/30/2012 17c. |
| 17d. | PHA code of PHA administering FSS contract | | | **TN007** 17d. |
| 17e. | WtW report category (check no more than one) | [ ] Enrollment | [ ] Progress | [ ] Exit |
| 17f. | WtW effective date (mm/dd/yyyy) of action | | | 17f. |
| 17g. | (1) PHA code of PHA that issued the WtW Voucher | | | 17g(1). |
| | (2) PHA code of PHA counting the family as enrolled in its WtW Voucher program (if different from 17g(1)) | | | 17g(2). |
| 17h. | General information | | | |

(1) Current employment status of head of household. Check the box to indicate the head of household's employment status at the time addendum completed.

[ ] Full-time (32 hours per week or more)     [ ] Part-time     [✓] Not employed

| | | | |
|---|---|---|---|
| (2) Date (mm/dd/yyyy) current employment began | | | 17h(2). |
| (3) Benefits in current employment: (check all that apply)   [ ] Health   [ ] Retirement account   [ ] Other | | | |
| (4) Years of school completed by the head of household. Enter the highest grade of education or years of formal schooling the head of household completed at the time Addendum is submitted. (0-25) | | | **0** 17h(4). |

(5) Assistance received by the family: (check all that apply)

[ ] TANF Income Assistance     [ ] General Assistance     [ ] Food Stamps
[ ] Medicaid/Children's Health Insurance Program     [ ] Earned Income Tax Credit

| (6) Number of children receiving childcare services | | | **0** 17h(6). |
|---|---|---|---|
| 17i. | Family services table (optional for WtW Voucher) | | |

| | (1)<br>Need (Y or N) | (2)<br>Need Met During Participation in Program (Y or N) | (3)<br>Service Provider |
|---|---|---|---|
| Education/Training | | | |
| GED | N | N | |
| High school | N | N | |
| Post secondary | Y | N | |
| Vocational/Job training | N | N | |
| Job search/job placement | Y | N | |
| Job retention | N | N | |
| Transportation | N | N | |
| Health services | N | N | |
| Alcohol and other drug abuse prevention services | N | N | |
| Mentoring | N | N | |
| Homeownership counseling | N | N | |
| Individual Development Account (IDA) | Y | N | |
| Child care | Y | N | |
| None | N | N | |

17i (3) Service provider codes:

P = PHA          D = DOL grantee          PR = For profit entity          E = Employer
T = TANF agency     V = Voluntary organization     N = Nonprofit agency     C = Community college

| Head of household name **Martin** | Social Security Number **XXX-XX-3733** | Date modified (mm/dd/yyyy) **03/10/2021** |
|---|---|---|

## Family Self-Sufficiency Program (if not in FSS program, skip to 17n)

| | | | |
|---|---|---|---|
| 17j. | FSS Contract Information | | |
| | (1) Initial start date (mm/yyyy) of contract of participation (FSS enrollment report only) | | 17j(1). |
| | (2) Initial end date (mm/yyyy) of contract of participation (FSS enrollment report only) | | 17j(2). |
| | (3) Contract date extended to (mm/yyyy) (if applicable) | | 17j(3). |
| | (4) Number of family members with Individual Training and Services Plan | 0 | 17j(4). |
| | (5) Did the family receive selection preference because of a FSS related service program participation? (FSS enrollment report only) (Y or N) | | 17j(5). |
| 17k. | FSS account information | | |
| | (1) Current FSS account monthly credit | 0 | 17k(1). |
| | (2) Current FSS account balance | 0 | 17k(2). |
| | (3) FSS account amount disbursed to the family (cumulative as of end of reporting period) | 0 | 17k(3). |
| 17m. | FSS exit information (FSS Exit Report only) | | |
| | (1) Did family complete contract of participation? (Y or N) | N | 17m(1). |
| | (2) If (1) is Yes, did family move to homeownership? (Y or N) | N | 17m(2). |

(3) If (1) is No, primary reason for exit:

[ ] Left voluntarily         [ ] Portability move-out         [ ] Contract expired but family did not fulfill obligations
[✓] Asked to leave program   [ ] Left because essential service was unavailable

## Welfare to Work Voucher Program

| | | | |
|---|---|---|---|
| 17n. | WtW program information | | |
| | (1) Date (mm/dd/yyyy) Voucher issued (WtW enrollment report only) | | 17n(1). |
| | (2) Date (mm/dd/yyyy) of request for lease approval (RFLA) for a unit leased | | 17n(2). |
| | 17q. Welfare to Work exit information (WtW exit report only) | N | |
| | (1) Is the family moving to homeownership? (Y or N) | | 17q(1). |

(2) Primary reason for leaving the WtW Voucher program:

[ ] Portability move-out

[ ] Family no longer needs subsidy

[ ] Subsidy terminated for Housing Choice Voucher program violation, other than WtW obligations

[ ] Subsidy terminated for violation of WtW obligations

[ ] Family voluntarily withdrew from Housing Choice Voucher program

[ ] Other

## Housing Assistance Payments Contract

### (HAP Contract)
### Section 8 Tenant-Based Assistance
### Housing Choice Voucher Program

**U.S. Department of Housing and Urban Development**
Office of Public and Indian Housing

---

## Part A of the HAP Contract: Contract Information
(To prepare the contract, fill out all contract information in Part A.)

1.  **Contents of Contract** This
    HAP contract has three parts:
    Part A: Contract Information
    Part B: Body of Contract Part
    C: Tenancy Addendum

2.  **Tenant**

Jessica R. Martin

3.  **Contract Unit**

33 Chickasaw Dr.
Jackson, TN 38305

4.  **Household**

    The following persons may reside in the unit. Other persons may not be added to the household without prior written approval of the owner and the PHA.

Jessica R Martin

Karson Martin

Karter Chanel Martin

5.  **Initial Lease Term**

    The initial lease term begins on (mm/dd/yyyy): 03/10/2021

    The initial lease term ends on (mm/dd/yyyy): 02/28/2022

6.  **Initial Rent to Owner**

    The initial rent to owner is: $ 983.00
    During the initial lease term, the owner may not raise the rent to owner.

7.  **Initial Housing Assistance Payment**

The HAP contract term commences on the first day of the initial lease term. At the beginning of the HAP contract term, the amount of the housing assistance payment by the PHA to the owner is $ 983.00 per month.
The amount of the monthly housing assistance payment by the PHA to the owner is subject to change during the HAP contract term in accordance with HUD requirements.

---

| **Housing Assistance Payments Contract** | **U.S. Department of Housing and Urban Development** |
|---|---|
| **(HAP Contract)** **Section 8 Tenant-Based Assistance** **Housing Choice Voucher Program** | Office of Public and Indian Housing |

## Part A of the HAP Contract: Contract Information

(To prepare the contract, fill out all contract information in Part A.)

1. **Contents of Contract** This HAP contract has three parts:
   > Part A: Contract Information
   > Part B: Body of Contract Part
   > C: Tenancy Addendum

2. **Tenant**

   Jessica R. Martin

3. **Contract Unit**

   33 Chickasaw Dr.
   Jackson, TN 38305

4. **Household**

   The following persons may reside in the unit. Other persons may not be added to the household without prior written approval of the owner and the PHA.

   Jessica R Martin

   Karson Martin

   Karter Chanel Martin

5. **Initial Lease Term**

   The initial lease term begins on (mm/dd/yyyy): 03/10/2021

   The initial lease term ends on (mm/dd/yyyy): 02/28/2022

6. **Initial Rent to Owner**

   The initial rent to owner is: $ 983.00
   During the initial lease term, the owner may not raise the rent to owner.

7. **Initial Housing Assistance Payment**

   The HAP contract term commences on the first day of the initial lease term. At the beginning of the HAP contract term, the amount of the housing assistance payment by the PHA to the owner is $ 983.00 per month.
   The amount of the monthly housing assistance payment by the PHA to the owner is subject to change during the HAP contract term in accordance with HUD requirements.

8. Utilities and Appliances
The owner shall provide or pay for the utilities/appliances indicated below by an "O". The tenant shall provide or pay for the utilities/appliances indicated below by a "T". Unless otherwise specified below, the owner shall pay for all utilities and provide the refrigerator and range/microwave.

| Item | Specify fuel type | Paid by |
|------|-------------------|---------|
| Heating | ☑ Natural gas  ☐ Bottle gas  ☐ Electric  ☐ Heat Pump  ☐ Oil  ☐ Other | T |
| Cooking | ☐ Natural gas  ☐ Bottle gas  ☑ Electric            ☐ Other | T |
| Water Heating | ☐ Natural gas  ☐ Bottle gas  ☑ Electric      ☐ Oil  ☐ Other | T |
| Other Electric | | T |
| Water | | T |
| Sewer | | T |
| Trash Collection | | T |
| Air Conditioning | | T |
| Other (specify) | | |
| | | Provided by |
| Refrigerator | | O |
| Range/Microwave | | O |

Signatures

Public Housing Agency

## Jackson Housing Authority
Print or Type Name of PHA

*Steven Monroe*
Signature

Steven Monroe - Director of HCV Program
Print or Type Name and Title of Signatory

03/10/2021
Date (mm/dd/yyyy)

Owner

## Better World Enterprises
Print or Type Name of Owner

*Ann Ewing for BWE*
Signature

*Ann Ewing*
Print or Type Name and Title of Signatory

03/10/2021
Date (mm/dd/yyyy)

Mail payments to:

## Better World Enterprises
Name

P. O. Box 10475
Jackson, TN 38308

Address (street, city, state, zip code)

8. Utilities and Appliances

The owner shall provide or pay for the utilities/appliances indicated below by an "O". The tenant shall provide or pay for the utilities/appliances indicated below by a "T". Unless otherwise specified below, the owner shall pay for all utilities and provide the refrigerator and range/microwave.

| Item | Specify fuel type | Paid by |
|---|---|---|
| Heating | ☑ Natural gas  ☐ Bottle gas  ☐ Electric  ☐ Heat Pump  ☐ Oil  ☐ Other | T |
| Cooking | ☐ Natural gas  ☐ Bottle gas  ☑ Electric  ☐ Other | T |
| Water Heating | ☐ Natural gas  ☐ Bottle gas  ☑ Electric  ☐ Oil  ☐ Other | T |
| Other Electric | | T |
| Water | | T |
| Sewer | | T |
| Trash Collection | | T |
| Air Conditioning | | T |
| Other (specify) | | |
| | | Provided by |
| Refrigerator | | O |
| Range/Microwave | | O |

**Signatures**

**Public Housing Agency**

# Jackson Housing Authority
Print or Type Name of PHA

*Steven Monroe*
Signature

Steven Monroe - Director of HCV Program
Print or Type Name and Title of Signatory

03/10/2021
Date (mm/dd/yyyy)

**Owner**

# Better World Enterprises
Print or Type Name of Owner

*Ann Ewing for BWE*
Signature

*Ann Ewing*
Print or Type Name and Title of Signatory

03/10/2021
Date (mm/dd/yyyy)

Mail payments to:

# Better World Enterprises
Name

P. O. Box 10475
Jackson, TN 38308
Address (street, city, state, zip code)

**Housing Assistance Payments Contract (HAP Contract)**
**Section 8 Tenant-Based Assistance**
**Housing Choice Voucher Program**

U.S. Department of Housing
and Urban Development
Office of Public and Indian Housing

---

## Part B of HAP Contract: Body of Contract

### 1. Purpose

a. This is a HAP contract between the PHA and the owner. The HAP contract is entered to provide assistance for the family under the Section 8 voucher program (see HUD program regulations at 24 Code of Federal Regulations Part 982).

b. The HAP contract only applies to the household and contract unit specified in Part A of the HAP contract.

c. During the HAP contract term, the PHA will pay housing assistance payments to the owner in accordance with the HAP contract.

d. The family will reside in the contract unit with assistance under the Section 8 voucher program. The housing assistance payments by the PHA assist the tenant to lease the contract unit from the owner for occupancy by the family.

### 2. Lease of Contract Unit

a. The owner has leased the contract unit to the tenant for occupancy by the family with assistance under the Section 8 voucher program.

b. The PHA has approved leasing of the unit in accordance with requirements of the Section 8 voucher program.

c. The lease for the contract unit must include word-for-word all provisions of the tenancy addendum required by HUD (Part C of the HAP contract).

d. The owner certifies that:

(1) The owner and the tenant have entered into a lease of the contract unit that includes all provisions of the tenancy addendum.

(2) The lease is in a standard form that is used in the locality by the owner and that is generally used for other unassisted tenants in the premises.

(3) The lease is consistent with State and local law.

e. The owner is responsible for screening the family's behavior or suitability for tenancy. The PHA is not responsible for such screening. The PHA has no liability or responsibility to the owner or other persons for the family's behavior or the family's conduct in tenancy.

### 3. Maintenance, Utilities, and Other Services

a. The owner must maintain the contract unit and premises in accordance with the housing quality standards (HQS).

b. The owner must provide all utilities needed to comply with the HQS.

c. If the owner does not maintain the contract unit in accordance with the HQS, or fails to provide all utilities needed to comply with the HQS, the PHA may exercise any available remedies. PHA remedies for such breach include recovery of overpayments, suspension of housing assistance payments, abatement or other reduction of housing assistance payments, termination of housing assistance payments, and termination of the

HAP contract. The PHA may not exercise such remedies against the owner because of an HQS breach for which the family is responsible, and that is not caused by the owner.

d. The PHA shall not make any housing assistance payments if the contract unit does not meet the HQS, unless the owner corrects the defect within the period specified by the PHA and the PHA verifies the correction. If a defect is life threatening, the owner must correct the defect within no more than 24 hours. For other defects, the owner must correct the defect within the period specified by the PHA.

e. The PHA may inspect the contract unit and premises at such times as the PHA determines necessary, to ensure that the unit is in accordance with the HQS.

f. The PHA must notify the owner of any HQS defects shown by the inspection.

g. The owner must provide all housing services as agreed to in the lease.

### 4. Term of HAP Contract

a. Relation to lease term. The term of the HAP contract begins on the first day of the initial term of the lease, and terminates on the last day of the term of the lease (including the initial lease term and any extensions).

b. When HAP contract terminates.

(1) The HAP contract terminates automatically if the lease is terminated by the owner or the tenant.

(2) The PHA may terminate program assistance for the family for any grounds authorized in accordance with HUD requirements. If the PHA terminates program assistance for the family, the HAP contract terminates automatically.

(3) If the family moves from the contract unit, the HAP contract terminates automatically.

(4) The HAP contract terminates automatically 180 calendar days after the last housing assistance payment to the owner.

(5) The PHA may terminate the HAP contract if the PHA determines, in accordance with HUD requirements, that available program funding is not sufficient to support continued assistance for families in the program.

(6) The HAP contract terminates automatically upon the death of a single member household, including single member households with a live-in aide.

(7) The PHA may terminate the HAP contract if the PHA determines that the contract unit does not provide adequate space in accordance with the HQS because of an increase in family size or a change in family composition.

(8) If the family breaks up, the PHA may terminate the HAP contract, or may continue housing

---

assistance payments day behalf of family members who remain in the contract unit.

    (9)  The PHA may terminate the HAP contract if the PHA determines that the unit does not meet all requirements of the HQS, or determines that the owner has otherwise breached the HAP contract.

## 5.  Provision and Payment for Utilities and Appliances

  a.  The lease must specify what utilities are to be provided or paid by the owner or the tenant.

  b.  The lease must specify what appliances are to be provided or paid by the owner or the tenant.

  c.  Part A of the HAP contract specifies what utilities and appliances are to be provided or paid by the owner or the tenant. The lease must be consistent with the HAP contract.

## 6.  Rent to Owner: Reasonable Rent

  a.  During the HAP contract term, the rent to owner may at no time exceed the reasonable rent for the contract unit as most recently determined or redetermined by the PHA in accordance with HUD requirements.

  b.  The PHA must determine whether the rent to owner is reasonable in comparison to rent for other comparable unassisted units. To make this determination, the PHA must consider:

    (1)  The location, quality, size, unit type, and age of the contract unit; and

    (2)  Any amenities, housing services, maintenance and utilities provided and paid by the owner.

  c.  The PHA must redetermine the reasonable rent when required in accordance with HUD requirements. The PHA may redetermine the reasonable rent at any time.

  d.  During the HAP contract term, the rent to owner may not exceed rent charged by the owner for comparable unassisted units in the premises. The owner must give the PHA any information requested by the PHA on rents charged by the owner for other units in the premises or elsewhere.

## 7.  PHA Payment to Owner

  a.  When paid

    (1)  During the term of the HAP contract, the PHA must make monthly housing assistance payments to the owner on behalf of the family at the beginning of each month.

    (2)  The PHA must pay housing assistance payments promptly when due to the owner.

    (3)  If housing assistance payments are not paid promptly when due after the first two calendar months of the HAP contract term, the PHA shall pay the owner penalties if all of the following circumstances apply: (i) Such penalties are in accordance with generally accepted practices and law, as applicable in the local housing market, governing penalties for late payment of rent by a tenant; (ii) It is the owner's practice to charge such penalties for assisted and unassisted tenants; and (iii) The owner also charges such penalties against the tenant for late payment of family rent to owner. However, the PHA shall not be obligated to pay any late payment penalty if HUD determines that late payment by the

      PHA is due to factors beyond the PHA's control. Moreover, the PHA shall not be obligated to pay any late payment penalty if housing assistance payments by the PHA are delayed or denied as a remedy for owner breach of the HAP contract (including any of the following PHA remedies: recovery of overpayments, suspension of housing assistance payments, abatement or reduction of housing assistance payments, termination of housing assistance payments and termination of the contract).

    (4)  Housing assistance payments shall only be paid to the owner while the family is residing in the contract unit during the term of the HAP contract. The PHA shall not pay a housing assistance payment to the owner for any month after the month when the family moves out.

  b.  **Owner compliance with HAP contract** Unless the owner has complied with all provisions of the HAP contract, the owner does not have a right to receive housing assistance payments under the HAP contract.

  c.  **Amount of PHA payment to owner**

    (1)  The amount of the monthly PHA housing assistance payment to the owner shall be determined by the PHA in accordance with HUD requirements for a tenancy under the voucher program.

    (2)  The amount of the PHA housing assistance payment is subject to change during the HAP contract term in accordance with HUD requirements. The PHA must notify the family and the owner of any changes in the amount of the housing assistance payment.

    (3)  The housing assistance payment for the first month of the HAP contract term shall be pro-rated for a partial month.

  d.  **Application of payment** The monthly housing assistance payment shall be credited against the monthly rent to owner for the contract unit.

  e.  **Limit of PHA responsibility**

    (1)  The PHA is only responsible for making housing assistance payments to the owner in accordance with the HAP contract and HUD requirements for a tenancy under the voucher program.

    (2)  The PHA shall not pay any portion of the rent to owner in excess of the housing assistance payment. The PHA shall not pay any other claim by the owner against the family.

  f.  **Overpayment to owner** If the PHA determines that the owner is not entitled to the housing assistance payment or any part of it, the PHA, in addition to other remedies, may deduct the amount of the overpayment from any amounts due the owner (including amounts due under any other Section 8 assistance contract).

## 8.  Owner Certification

During the term of this contract, the owner certifies that:

  a.  The owner is maintaining the contract unit and premises in accordance with the HQS.

  b.  The contract unit is leased to the tenant. The lease includes the tenancy addendum (Part C of the HAP

and program requirements. The owner has provided the lease to the PHA, including any revisions of the lease.

c. The rent to owner does not exceed rents charged by the owner for rental of comparable unassisted units in the premises.

d. Except for the rent to owner, the owner has not received and will not receive any payments or other consideration (from the family, the PHA, HUD, or any other public or private source) for rental of the contract unit during the HAP contract term.

e. The family does not own or have any interest in the contract unit.

f. To the best of the owner's knowledge, the members of the family reside in the contract unit, and the unit is the family's only residence.

g. The owner (including a principal or other interested party) is not the parent, child, grandparent, grandchild, sister, or brother of any member of the family, unless the PHA has determined (and has notified the owner and the family of such determination) that approving rental of the unit, notwithstanding such relationship, would provide reasonable accommodation for a family member who is a person with disabilities.

9. **Prohibition of Discrimination**. In accordance with applicable equal opportunity statutes, Executive Orders, and regulations:

a. The owner must not discriminate against any person because of race, color, religion, sex, national origin, age, familial status, or disability in connection with the HAP contract. Eligibility for HUD's programs must be made without regard to actual or perceived sexual orientation, gender identity, or marital status.

b. The owner must cooperate with the PHA and HUD in conducting equal opportunity compliance reviews and complaint investigations in connection with the HAP contract.

c. Violence Against Women Act. The owner must comply with the Violence Against Women Act, as amended, and HUD's implementing regulation at 24 CFR part 5, Subpart L, and program regulations.

10. **Owner's Breach of HAP Contract**

a. Any of the following actions by the owner (including a principal or other interested party) is a breach of the HAP contract by the owner:

(1) If the owner has violated any obligation under the HAP contract, including the owner's obligation to maintain the unit in accordance with the HQS.

(2) If the owner has violated any obligation under any other housing assistance payments contract under Section 8.

(3) If the owner has committed fraud, bribery or any other corrupt or criminal act in connection with any Federal housing assistance program.

(4) For projects with mortgages insured by HUD or loans made by HUD, if the owner has failed to comply with the regulations for the applicable mortgage insurance or loan program, with the mortgage or mortgage note, or with the regulatory agreement; or if the owner has committed fraud, bribery or any other corrupt or criminal act in connection with the mortgage or loan.

(5) If the owner has engaged in any drug-related criminal activity or any violent criminal activity.

b. If the PHA determines that a breach has occurred, the PHA may exercise any of its rights and remedies under the HAP contract, or any other available rights and remedies for such breach. The PHA shall notify the owner of such determination, including a brief statement of the reasons for the determination. The notice by the PHA to the owner may require the owner to take corrective action, as verified or determined by the PHA, by a deadline prescribed in the notice.

c. The PHA's rights and remedies for owner breach of the HAP contract include recovery of overpayments, suspension of housing assistance payments, abatement or other reduction of housing assistance payments, termination of housing assistance payments, and termination of the HAP contract.

d. The PHA may seek and obtain additional relief by judicial order or action, including specific performance, other injunctive relief or order for damages.

e. Even if the family continues to live in the contract unit, the PHA may exercise any rights and remedies for owner breach of the HAP contract.

f. The PHA's exercise or non-exercise of any right or remedy for owner breach of the HAP contract is not a waiver of the right to exercise that or any other right or remedy at any time.

11. **PHA and HUD Access to Premises and Owner's Records**

a. The owner must provide any information pertinent to the HAP contract that the PHA or HUD may reasonably require.

b. The PHA, HUD and the Comptroller General of the United States shall have full and free access to the contract unit and the premises, and to all accounts and other records of the owner that are relevant to the HAP contract, including the right to examine or audit the records and to make copies.

c. The owner must grant such access to computerized or other electronic records, and to any computers, equipment or facilities containing such records, and must provide any information or assistance needed to access the records.

12. **Exclusion of Third Party Rights**

a. The family is not a party to or third party beneficiary of Part B of the HAP contract. The family may not enforce any provision of Part B, and may not exercise any right or remedy against the owner or PHA under Part B.

b. The tenant or the PHA may enforce the tenancy addendum (Part C of the HAP contract) against the owner, and may exercise any right or remedy against the owner under the tenancy addendum.

c. The PHA does not assume any responsibility for injury to, or any liability to, any person injured as a result of the owner's action or failure to act in connection with management of the contract unit or the premises or with implementation of the HAP contract, or as a result of any other action or failure to act by the owner.

d. The owner is not the agent of the PHA, and the HAP contract does not create or affect any relationship between the PHA and any lender to the owner or any suppliers, employees, contractors or subcontractors used

by the owner in connection with management of the
contract unit or the premises or with implementation of
the HAP contract.

### 13. Conflict of Interest

a. "Covered individual" means a person or entity who is a
member of any of the following classes:

   (1) Any present or former member or officer of the
   PHA (except a PHA commissioner who is a
   participant in the program);

   (2) Any employee of the PHA, or any contractor,
   sub-contractor or agent of the PHA, who
   formulates policy or who influences decisions
   with respect to the program;

   (3) Any public official, member of a governing
   body, or State or local legislator, who exercises
   functions or responsibilities with respect to the
   program; or

   (4) Any member of the Congress of the United
   States.

b. A covered individual may not have any direct or indirect
interest in the HAP contract or in any benefits or
payments under the contract (including the interest of an
immediate family member of such covered individual)
while such person is a covered individual or during one
year thereafter.

c. "Immediate family member" means the spouse, parent
(including a stepparent), child (including a stepchild),
grandparent, grandchild, sister or brother (including a
stepsister or stepbrother) of any covered individual.

d. The owner certifies and is responsible for assuring that
no person or entity has or will have a prohibited interest,
at execution of the HAP contract, or at any time during
the HAP contract term.

e. If a prohibited interest occurs, the owner shall
promptly and fully disclose such interest to the PHA
and HUD.

f. The conflict of interest prohibition under this section
may be waived by the HUD field office for good cause.

g. No member of or delegate to the Congress of the
United States or resident commissioner shall be
admitted to any share or part of the HAP contract or to
any benefits which may arise from it.

### 14. Assignment of the HAP Contract

a. The owner may not assign the HAP contract to a new
owner without the prior written consent of the PHA.

b. If the owner requests PHA consent to assign the HAP
contract to a new owner, the owner shall supply any
information as required by the PHA pertinent to the
proposed assignment.

c. The HAP contract may not be assigned to a new owner
that is debarred, suspended or subject to a limited denial
of participation under HUD regulations (see 24 Code of
Federal Regulations Part 24).

d. The HAP contract may not be assigned to a new owner
if HUD has prohibited such assignment because:

   (1) The Federal government has instituted an
   administrative or judicial action against the
   owner or proposed new owner for violation of
   the Fair Housing Act or other Federal equal
   opportunity requirements, and such action is
   pending; or

   (2) A court or administrative agency has determined
   that the owner or proposed new owner violated
   the Fair Housing Act or other Federal equal
   opportunity requirements.

e. The HAP contract may not be assigned to a new owner
if the new owner (including a principal or other
interested party) is the parent, child, grandparent,
grandchild, sister or brother of any member of the
family, unless the PHA has determined (and has notified
the family of such determination) that approving the
assignment, notwithstanding such relationship, would
provide reasonable accommodation for a family
member who is a person with disabilities.

f. The PHA may deny approval to assign the HAP contract
if the owner or proposed new owner (including a
principal or other interested party):

   (1) Has violated obligations under a housing
   assistance payments contract under Section 8;

   (2) Has committed fraud, bribery or any other
   corrupt or criminal act in connection with any
   Federal housing program;

   (3) Has engaged in any drug-related criminal
   activity or any violent criminal activity;

   (4) Has a history or practice of non-compliance
   with the HQS for units leased under the Section
   8 tenant-based programs, or non-compliance
   with applicable housing standards for units
   leased with project-based Section 8 assistance or
   for units leased under any other Federal housing
   program;

   (5) Has a history or practice of failing to terminate
   tenancy of tenants assisted under any Federally
   assisted housing program for activity engaged in
   by the tenant, any member of the household, a
   guest or another person under the control of any
   member of the household that:

      (a) Threatens the right to peaceful enjoyment
      of the premises by other residents;

      (b) Threatens the health or safety of other
      residents, of employees of the PHA, or of
      owner employees or other persons engaged
      in management of the housing;

      (c) Threatens the health or safety of, or the
      right to peaceful enjoyment of their
      residents by, persons residing in the
      immediate vicinity of the premises; or

      (d) Is drug-related criminal activity or violent
      criminal activity;

   (6) Has a history or practice of renting units that fail
   to meet State or local housing codes; or

   (7) Has not paid State or local real estate taxes,
   fines or assessments.

g. The new owner must agree to be bound by and comply
with the HAP contract. The agreement must be in
writing, and in a form acceptable to the PHA. The new
owner must give the PHA a copy of the executed
agreement.

### 15. Reserved

**16. Written Notices** Any notice by the PHA or the owner in
connection with this contract must be in writing.

**17.  Entire Agreement: Interpretation**

  a.  The HAP contract contains the entire agreement between the owner and the PHA.

  b   The HAP contract shall be interpreted and implemented in accordance with all statutory requirements, and with all HUD requirements, including the HUD program regulations at 24 Code of Federal Regulations Part 982.

**Housing Assistance Payments Contract**
**(HAP Contract)**
**Section 8 Tenant-Based Assistance**
**Housing Choice Voucher Program**

U.S. Department of Housing
and Urban Development
Office of Public and Indian Housing

---

## Part C of HAP Contract: Tenancy Addendum

### 1.   Section 8 Voucher Program

a.   The owner is leasing the contract unit to the tenant for occupancy by the tenant's family with assistance for a tenancy under the Section 8 housing choice voucher program (voucher program) of the United States Department of Housing and Urban Development (HUD).

b.   The owner has entered into a Housing Assistance Payments Contract (HAP contract) with the PHA under the voucher program. Under the HAP contract, the PHA will make housing assistance payments to the owner to assist the tenant in leasing the unit from the owner.

### 2.   Lease

a.   The owner has given the PHA a copy of the lease, including any revisions agreed by the owner and the tenant. The owner certifies that the terms of the lease are in accordance with all provisions of the HAP contract and that the lease includes the tenancy addendum.

b.   The tenant shall have the right to enforce the tenancy addendum against the owner. If there is any conflict between the tenancy addendum and any other provisions of the lease, the language of the tenancy addendum shall control.

### 3.   Use of Contract Unit

a.   During the lease term, the family will reside in the contract unit with assistance under the voucher program.

b.   The composition of the household must be approved by the PHA. The family must promptly inform the PHA of the birth, adoption or court-awarded custody of a child. Other persons may not be added to the household without prior written approval of the owner and the PHA.

c.   The contract unit may only be used for residence by the PHA-approved household members. The unit must be the family's only residence. Members of the household may engage in legal profit making activities incidental to primary use of the unit for residence by members of the family.

d.   The tenant may not sublease or let the unit.

e.   The tenant may not assign the lease or transfer the unit.

### 4.   Rent to Owner

a.   The initial rent to owner may not exceed the amount approved by the PHA in accordance with HUD requirements.

b.   Changes in the rent to owner shall be determined by the provisions of the lease. However, the owner may not raise the rent during the initial term of the lease.

c.   During the term of the lease (including the initial term of the lease and any extension term), the rent to owner may at no time exceed:

   (1)   The reasonable rent for the unit as most recently determined or redetermined by the PHA in accordance with HUD requirements, or

   (2)   Rent charged by the owner for comparable unassisted units in the premises.

### 5.   Family Payment to Owner

a.   The family is responsible for paying the owner any portion of the rent to owner that is not covered by the PHA housing assistance payment.

b.   Each month, the PHA will make a housing assistance payment to the owner on behalf of the family in accordance with the HAP contract. The amount of the monthly housing assistance payment will be determined by the PHA in accordance with HUD requirements for a tenancy under the Section 8 voucher program.

c.   The monthly housing assistance payment shall be credited against the monthly rent to owner for the contract unit.

d.   The tenant is not responsible for paying the portion of rent to owner covered by the PHA housing assistance payment under the HAP contract between the owner and the PHA. A PHA failure to pay the housing assistance payment to the owner is not a violation of the lease. The owner may not terminate the tenancy for nonpayment of the PHA housing assistance payment.

e.   The owner may not charge or accept, from the family or from any other source, any payment for rent of the unit in addition to the rent to owner. Rent to owner includes all housing services, maintenance, utilities and appliances to be provided and paid by the owner in accordance with the lease.

f.   The owner must immediately return any excess rent payment to the tenant.

### 6.   Other Fees and Charges

a.   Rent to owner does not include cost of any meals or supportive services or furniture which may be provided by the owner.

b.   The owner may not require the tenant or family members to pay charges for any meals or supportive services or furniture which may be provided by the owner. Nonpayment of any such charges is not grounds for termination of tenancy.

c.   The owner may not charge the tenant extra amounts for items customarily included in rent to owner in the locality, or provided at no additional cost to unsubsidized tenants in the premises.

### 7.   Maintenance, Utilities, and Other Services

a.   **Maintenance**

   (1)   The owner must maintain the unit and premises in accordance with the HQS.

   (2)   Maintenance and replacement (including redecoration) must be in accordance with the standard practice for the building concerned as established by the owner.

b.   **Utilities and appliances**

   (1)   The owner must provide all utilities needed to comply with the HQS.

---

(2)  The owner is not responsible for a breach of the HQS caused by the tenant's failure to:

    (a)  Pay for any utilities that are to be paid by the tenant.

    (b)  Provide and maintain any appliances that are to be provided by the tenant.

c.  **Family damage**. The owner is not responsible for a breach of the HQS because of damages beyond normal wear and tear caused by any member of the household or by a guest.

d.  **Housing services**. The owner must provide all housing services as agreed to in the lease.

## 8.  Termination of Tenancy by Owner

a.  **Requirements**. The owner may only terminate the tenancy in accordance with the lease and HUD requirements.

b.  **Grounds**. During the term of the lease (the initial term of the lease or any extension term), the owner may only terminate the tenancy because of:

    (1)  Serious or repeated violation of the lease;

    (2)  Violation of Federal, State, or local law that imposes obligations on the tenant in connection with the occupancy or use of the unit and the premises;

    (3)  Criminal activity or alcohol abuse (as provided in paragraph c); or

    (4)  Other good cause (as provided in paragraph d).

c.  **Criminal activity or alcohol abuse.**

    (1)  The owner may terminate the tenancy during the term of the lease if any member of the household, a guest or another person under a resident's control commits any of the following types of criminal activity:

        (a)  Any criminal activity that threatens the health or safety of, or the right to peaceful enjoyment of the premises by, other residents (including property management staff residing on the premises);

        (b)  Any criminal activity that threatens the health or safety of, or the right to peaceful enjoyment of their residences by, persons residing in the immediate vicinity of the premises;

        (c)  Any violent criminal activity on or near the premises; or

        (d)  Any drug-related criminal activity on or near the premises.

    (2)  The owner may terminate the tenancy during the term of the lease if any member of the household is:

        (a)  Fleeing to avoid prosecution, or custody or confinement after conviction, for a crime, or attempt to commit a crime, that is a felony under the laws of the place from which the individual flees, or that, in the case of the State of New Jersey, is a high misdemeanor; or

        (b)  Violating a condition of probation or parole under Federal or State law.

    (3)  The owner may terminate the tenancy for criminal activity by a household member in accordance with this section if the owner determines that the household member has committed the criminal activity, regardless of whether the household member has been arrested or convicted for such activity.

    (4)  The owner may terminate the tenancy during the term of the lease if any member of the household has engaged in abuse of alcohol that threatens the health, safety or right to peaceful enjoyment of the premises by other residents.

d.  **Other good cause for termination of tenancy\**

    (1)  During the initial lease term, other good cause for termination of tenancy must be something the family did or failed to do.

    (2)  During the initial lease term or during any extension term, other good cause may include:

        (a)  Disturbance of neighbors,

        (b)  Destruction of property, or

        (c)  Living or housekeeping habits that cause damage to the unit or premises.

    (3)  After the initial lease term, such good cause may include:

        (a)  The tenant's failure to accept the owner's offer of a new lease or revision;

        (b)  The owner's desire to use the unit for personal or family use or for a purpose other than use as a residential rental unit; or

        (c)  A business or economic reason for termination of the tenancy (such as sale of the property, renovation of the unit, the owner's desire to rent the unit for a higher rent).

        (d)  The examples of other good cause in this paragraph do not preempt any State or local laws to the contrary.

## 9.  Protections for Victims of Domestic Violence, Dating Violence, Sexual Assault, or Stalking.

a.  **Purpose:** This section incorporates the protections for victims of domestic violence, dating violence, sexual assault, or stalking in accordance with subtitle N of the Violence Against Women Act of 1994, as amended (codified as amended at 42 U.S.C. 14043e et seq.) (VAWA) and implementing regulations at 24 CFR part 5, subpart L.

b.  **Conflict with other Provisions:** In the event of any conflict between this provision and any other provisions included in Part C of the HAP contract, this provision shall prevail.

c. **Effect on Other Protections:** Nothing in this section shall be construed to supersede any provision of any Federal, State, or local law that provides greater protection than this section for victims of domestic violence, dating violence, sexual assault, or stalking.

d. **Definition:** As used in this Section, the terms "actual and imminent threat," "affiliated individual," "bifurcate", "dating violence," "domestic violence," "sexual assault," and "stalking" are defined in HUD's regulations at 24 CFR part 5, subpart L. The terms "Household" and "Other Person Under the Tenant's Control" are defined at 24 CFR part 5, subpart A.

e. **VAWA Notice and Certification Form:** The PHA shall provide the tenant with the "Notice of Occupancy Rights under VAWA and the certification form described under 24 CFR 5.2005(a)(1) and (2).

f. **Protection for victims of Domestic Violence, Dating Violence, Sexual Assault, or Stalking:**

   (1) The landlord or the PHA will not deny admission to, deny assistance under, terminate from participation in, or evict the Tenant on the basis of or as a direct result of the fact that the Tenant is or has been a victim of domestic violence, dating violence, sexual assault, or stalking, if the Tenant otherwise qualifies for admission, assistance, participation, or occupancy. 24 CFR 5.2005(b)(1).

   (2) The tenant shall not be denied tenancy or occupancy rights solely on the basis of criminal activity engaged in by a member of the Tenant's Household or any guest or Other Person Under the Tenant's Control, if the criminal activity is directly related to domestic violence, dating violence, sexual assault, or stalking, and the Tenant or an Affiliated Individual of the Tenant is the victim or the threatened victim of domestic violence, dating violence, sexual assault, or stalking. 24 CFR 5.2005(b)(2).

   (3) An incident or incidents of actual or threatened domestic violence, dating violence, sexual assault or stalking will not be construed as serious or repeated violations of the lease by the victim or threatened victim of the incident. Nor shall it not be construed as other "good cause" for termination of the lease, tenancy, or occupancy rights of such a victim or threatened victim. 24 CFR 5.2005(c)(1) and (c)(2).

g. **Compliance with Court Orders:** Nothing in this Addendum will limit the authority of the landlord, when notified by a court order, to comply with the court order with respect to the rights of access or control of property (including civil protection orders issued to protect a victim of domestic violence, dating violence, sexual assault, or stalking) or with respect to the distribution or possession of property among members of the Tenant's Household. 24 CFR 5.2005(d)(1).

h. **Violations Not Premised on Domestic Violence, Dating Violence, Sexual Assault, or Stalking:** Nothing in this section shall be construed to limit any otherwise available authority of the Landlord to evict or the public housing authority to terminate the assistance of a Tenant for any violation not premised on an act of domestic violence, dating violence, sexual assault, or stalking that is in question against the Tenant or an Affiliated Individual of the Tenant.

However, the Landlord or the PHA will not subject the tenant, who is or has been a victim of domestic violence, dating violence, sexual assault, or stalking, to a more demanding standard than other tenants in determining whether to evict or terminate assistance. 24 CFR 5.2005(d)(2).

i. **Actual and Imminent Threats:**

   (1) Nothing in this section will be construed to limit the authority of the Landlord to evict the Tenant if the Landlord can demonstrate that an "actual and imminent threat" to other tenants or those employed at or providing service to the property would be present if the Tenant or lawful occupant is not evicted. In this context, words, gestures, actions, or other indicators will be construed as an actual and imminent threat if they meet the following standards for an actual and imminent threat: "Actual and imminent threat" refers to a physical danger that is real, would occur within an immediate time frame, and could result in death or serious bodily harm. In determining whether an individual would pose an actual and imminent threat, the factors to be considered include: the duration of the risk, the nature and severity of the potential harm, the likelihood that the potential harm will occur, and the length of time before the potential harm would occur. 24 CFR 5.2005(d)(3).

   (2) If an actual and imminent threat is demonstrated, eviction should be used only when there are no other actions that could be taken to reduce or eliminate the threat, including, but not limited to, transferring the victim to a different unit, barring the perpetrator from the property, contacting law enforcement to increase police presence, developing other plans to keep the property safe, or seeking other legal remedies to prevent the perpetrator from acting on a threat. Restrictions predicated on public safety cannot be based on stereotypes, but must be tailored to particularized concerns about individual residents. 24 CFR 5.2005(d)(4).

j. **Emergency Transfer:** A tenant who is a victim of domestic violence, dating violence, sexual assault, or stalking may request an emergency transfer in accordance with the PHA's emergency transfer plan. 24 CFR 5.2005(e). The PHA's emergency transfer plan must be made available upon request, and incorporate strict confidentiality measures to ensure that the PHA does not disclose a tenant's dwelling unit location to a person who committed or threatened to commit an act of domestic violence, dating violence, sexual assault, or stalking against the tenant;

For transfers in which the tenant would not be considered a new applicant, the PHA must ensure that a request for an emergency transfer receives, at a minimum, any applicable additional priority that is already provided to other types of emergency transfer requests. For transfers in which the tenant would be considered a new applicant, the plan must include policies for assisting a tenant with this transfer.

k. **Bifurcation:** Subject to any lease termination requirements or procedures prescribed by Federal, State, or local law, if any member of the Tenant's Household engages in criminal activity directly relating to domestic violence, dating violence, sexual assault, or stalking, the Landlord may "bifurcate" the Lease, or remove that Household member from the Lease, without regard to whether that Household member is a signatory to the Lease, in order to evict, remove, or terminate the occupancy rights of that Household member without evicting, removing, or otherwise

regulation, as a condition for Federal assistance to the tenant and tenant's family under the Section 8 voucher program.

b. In case of any conflict between the provisions of the tenancy addendum as required by HUD, and any other provisions of the lease or any other agreement between the owner and the tenant, the requirements of the HUD-required tenancy addendum shall control.

## 18. Changes in Lease or Rent

a. The tenant and the owner may not make any change in the tenancy addendum. However, if the tenant and the owner agree to any other changes in the lease, such changes must be in writing, and the owner must immediately give the PHA a copy of such changes. The lease, including any changes, must be in accordance with the requirements of the tenancy addendum.

b. In the following cases, tenant-based assistance shall not be continued unless the PHA has approved a new tenancy in accordance with program requirements and has executed a new HAP contract with the owner:

   (1) If there are any changes in lease requirements governing tenant or owner responsibilities for utilities or appliances;

   (2) If there are any changes in lease provisions governing the term of the lease;

   (3) If the family moves to a new unit, even if the unit is in the same building or complex.

c. PHA approval of the tenancy, and execution of a new HAP contract, are not required for agreed changes in the lease other than as specified in paragraph b.

d. The owner must notify the PHA of any changes in the amount of the rent to owner at least sixty days before any such changes go into effect, and the amount of the rent to owner following any such agreed change may not exceed the reasonable rent for the unit as most recently determined or redetermined by the PHA in accordance with HUD requirements.

## 19. Notices

Any notice under the lease by the tenant to the owner or by the owner to the tenant must be in writing.

## 20. Definitions

**Contract unit.** The housing unit rented by the tenant with assistance under the program.

**Family.** The persons who may reside in the unit with assistance under the program.

**HAP contract.** The housing assistance payments contract between the PHA and the owner. The PHA pays housing assistance payments to the owner in accordance with the HAP contract.

**Household.** The persons who may reside in the contract unit. The household consists of the family and any PHA-approved live-in aide. (A live-in aide is a person who resides in the unit to provide necessary supportive services for a member of the family who is a person with disabilities.)

**Housing quality standards (HQS).** The HUD minimum quality standards for housing assisted under the Section 8 tenant-based programs.

**HUD.** The U.S. Department of Housing and Urban Development.

**HUD requirements.** HUD requirements for the Section 8 program. HUD requirements are issued by HUD headquarters, as regulations, Federal Register notices or other binding program directives.

**Lease.** The written agreement between the owner and the tenant for the lease of the contract unit to the tenant. The lease includes the tenancy addendum prescribed by HUD.

**PHA.** Public Housing Agency.

**Premises.** The building or complex in which the contract unit is located, including common areas and grounds.

**Program.** The Section 8 housing choice voucher program.

**Rent to owner.** The total monthly rent payable to the owner for the contract unit. The rent to owner is the sum of the portion of rent payable by the tenant plus the PHA housing assistance payment to the owner.

**Section 8.** Section 8 of the United States Housing Act of 1937 (42 United States Code 1437f).

**Tenant.** The family member (or members) who leases the unit from the owner.

**Voucher program.** The Section 8 housing choice voucher program. Under this program, HUD provides funds to a PHA for rent subsidy on behalf of eligible families. The tenancy under the lease will be assisted with rent subsidy for a tenancy under the voucher program.

Room Codes: 1 = Bedroom or Any Other Room used for Sleeping (regardless of type of room);  2 = Living Room or Dining Area;
3 = Second Living Room, Family Room, Den, Playroom, TV Room;  4 = Entrance Halls, Corridors, Halls, Staircases;  5 = Additional Bathroom;  6 = Other

| Item No. | 1. Living Room (Continued) | Yes Pass | No Fail | In-Conc. | Comment | Final Approval Date (mm/dd/yyyy) |
|---|---|---|---|---|---|---|
| 1.9 | Lead-Based Paint | | | | ☐ Not Applicable | |
| | Are all painted surfaces free of deteriorated paint? | ✓ | | | | 03/01/2021 |
| | If not, do deteriorated surfaces exceed two square feet per room and/or is more than 10% of a component? | | | | | |
| | **2. Kitchen** | | | | | |
| 2.1 | Kitchen Area Present | ✓ | | | | 03/01/2021 |
| 2.2 | Electricity | ✓ | | | | 03/01/2021 |
| 2.3 | Electrical Hazards | ✓ | | | | 03/01/2021 |
| 2.4 | Security | ✓ | | | | 03/01/2021 |
| 2.5 | Window Condition | ✓ | | | | 03/01/2021 |
| 2.6 | Ceiling Condition | ✓ | | | | 03/01/2021 |
| 2.7 | Wall Condition | ✓ | | | | 03/01/2021 |
| 2.8 | Floor Condition | ✓ | | | | 03/01/2021 |
| 2.9 | Lead-Based Paint | | | | ☐ Not Applicable | |
| | Are all painted surfaces free of deteriorated paint? | ✓ | | | | 03/01/2021 |
| | If not, do deteriorated surfaces exceed two square feet per room and/or is more than 10% of a component? | | | | | |
| 2.10 | Stove or Range with Oven | ✓ | | | | 03/01/2021 |
| 2.11 | Refrigerator | ✓ | | | | 03/01/2021 |
| 2.12 | Sink | ✓ | | | | 03/01/2021 |
| 2.13 | Space for Storage, Preparation, and Serving of Food | ✓ | | | | 03/01/2021 |
| | **3. Bathroom** | | | | | |
| 3.1 | Bathroom Present | ✓ | | | | 03/01/2021 |
| 3.2 | Electricity | ✓ | | | | 03/01/2021 |
| 3.3 | Electrical Hazards | ✓ | | | | 03/01/2021 |
| 3.4 | Security | ✓ | | | | 03/01/2021 |
| 3.5 | Window Condition | ✓ | | | | 03/01/2021 |
| 3.6 | Ceiling Condition | ✓ | | | | 03/01/2021 |
| 3.7 | Wall Condition | ✓ | | | | 03/01/2021 |
| 3.8 | Floor Condition | ✓ | | | | 03/01/2021 |
| 3.9 | Lead-Based Paint | | | | ☐ Not Applicable | |
| | Are all painted surfaces free of deteriorated paint? | ✓ | | | | 03/01/2021 |
| | If not, do deteriorated surfaces exceed two square feet per room and/or is more than 10% of a component? | | | | | |
| 3.10 | Flush Toilet in Enclosed Room in Unit | ✓ | | | | 03/01/2021 |
| 3.11 | Fixed Wash Basin or Lavatory in Unit | ✓ | | | | 03/01/2021 |
| 3.12 | Tub or Shower in Unit | ✓ | | | | 03/01/2021 |
| 3.13 | Ventilation | ✓ | | | | 03/01/2021 |

| Item No. | 4. Other Rooms Used For Living and Halls | Yes Pass | No Fail | In-Conc. | Comment | Final Approval Date (mm/dd/yyyy) |
|---|---|---|---|---|---|---|
| 4.1 | Room Code* and Room Location ☐ | | | | (Circle One) Right/Center/Left   (Circle One) Front/Center/Rear   ____Floor Level | |
| 4.2 | Electricity/Illumination | | | | | |
| 4.3 | Electrical Hazards | | | | | |
| 4.4 | Security | | | | | |
| 4.5 | Window Condition | | | | | |
| 4.6 | Ceiling Condition | | | | | |
| 4.7 | Wall Condition | | | | | |
| 4.8 | Floor Condition | | | | | |
| 4.9 | Lead-Based Paint | | | | ☐ Not Applicable | |
| | Are all painted surfaces free of deteriorated paint? | | | | | |
| | If not, do deteriorated surfaces exceed two square feet per room and/or is more than 10% of a component? | | | | | |
| 4.10 | Smoke Detectors | | | | | |
| 4.1 | Room Code* and Room Location ☐ | | | | (Circle One) Right/Center/Left   (Circle One) Front/Center/Rear   ____Floor Level | |
| 4.2 | Electricity/Illumination | | | | | |
| 4.3 | Electrical Hazards | | | | | |
| 4.4 | Security | | | | | |
| 4.5 | Window Condition | | | | | |
| 4.6 | Ceiling Condition | | | | | |
| 4.7 | Wall Condition | | | | | |
| 4.8 | Floor Condition | | | | | |
| 4.9 | Lead-Based Paint | | | | ☐ Not Applicable | |
| | Are all painted surfaces free of deteriorated paint? | | | | | |
| | If not, do deteriorated surfaces exceed two square feet per room and/or is more than 10% of a component? | | | | | |
| 4.10 | Smoke Detectors | | | | | |
| 4.1 | Room Code* and Room Location ☐ | | | | (Circle One) Right/Center/Left   (Circle One) Front/Center/Rear   ____Floor Level | |
| 4.2 | Electricity/Illumination | | | | | |
| 4.3 | Electrical Hazards | | | | | |
| 4.4 | Security | | | | | |
| 4.5 | Window Condition | | | | | |
| 4.6 | Ceiling Condition | | | | | |
| 4.7 | Wall Condition | | | | | |
| 4.8 | Floor Condition | | | | | |
| 4.9 | Lead-Based Paint | | | | ☐ Not Applicable | |
| | Are all painted surfaces free of deteriorated paint? | | | | | |
| | If not, do deteriorated surfaces exceed two square feet per room and/or is more than 10% of a component? | | | | | |
| 4.10 | Smoke Detectors | | | | | |

Previous editions are obsolete

form HUD-52580  (7/201
ref Handbook 7420.

| Item No. | 4. Other Rooms Used For Living and Halls | Yes Pass | No Fail | In-Conc. | Comment | Final Approval Date (mm/dd/yyyy |
|---|---|---|---|---|---|---|
| 4.1 | Room Code* and Room Location ☐ | | | | (Circle One) Right/Center/Left ・ (Circle One) Front/Center/Rear ____Floor Level | |
| 4.2 | Electricity/Illumination | | | | | |
| 4.3 | Electrical Hazards | | | | | |
| 4.4 | Security | | | | | |
| 4.5 | Window Condition | | | | | |
| 4.6 | Ceiling Condition | | | | | |
| 4.7 | Wall Condition | | | | | |
| 4.8 | Floor Condition | | | | | |
| 4.9 | Lead-Based Paint | | | | ☐ Not Applicable | |
| | Are all painted surfaces free of deteriorated paint? | | | | | |
| | If not, do deteriorated surfaces exceed two square feet per room and/or is more than 10% of a component? | | | | | |
| 4.10 | Smoke Detectors | | | | | |
| 4.1 | Room Code* and Room Location ☐ | | | | (Circle One) Right/Center/Left ・ (Circle One) Front/Center/Rear ____Floor Level | |
| 4.2 | Electricity/Illumination | | | | | |
| 4.3 | Electrical Hazards | | | | | |
| 4.4 | Security | | | | | |
| 4.5 | Window Condition | | | | | |
| 4.6 | Ceiling Condition | | | | | |
| 4.7 | Wall Condition | | | | | |
| 4.8 | Floor Condition | | | | | |
| 4.9 | Lead-Based Paint | | | | ☐ Not Applicable | |
| | Are all painted surfaces free of deteriorated paint? | | | | | |
| | If not, do deteriorated surfaces exceed two square feet per room and/or is more than 10% of a component? | | | | | |
| 4.10 | Smoke Detectors | | | | | |
| | **5. All Secondary Rooms** (Rooms not used for living) | | | | | |
| 5.1 | None        Go to Part 6 | | | | | |
| 5.2 | Security | ✓ | | | | 03/01/202 |
| 5.3 | Electrical Hazards | ✓ | | | | 03/01/202 |
| 5.4 | Other Potentially Hazardous Features in these Rooms | ✓ | | | | 03/01/202 |

| Item No. | 6. Building Exterior | Yes Pass | No Fail | In-Conc. | Comment | Final Approval Date (mm/dd/yyyy) |
|---|---|---|---|---|---|---|
| 6.1 | Condition of Foundation | ✓ | | | | 03/01/2021 |
| 6.2 | Condition of Stairs, Rails, and Porches | ✓ | | | | 03/01/2021 |
| 6.3 | Condition of Roof/Gutters | ✓ | | | | 03/01/2021 |
| 6.4 | Condition of Exterior Surfaces | ✓ | | | | 03/01/2021 |
| 6.5 | Condition of Chimney | ✓ | | | | 03/01/2021 |
| 6.6 | Lead Paint: Exterior Surfaces Are all painted surfaces free of deteriorated paint? | ✓ | | | ☐ Not Applicable | 03/01/2021 |
| | If not, do deteriorated surfaces exceed 20 square feet of total exterior surface area? | | | | | |
| 6.7 | Manufactured Home: Tie Downs | ✓ | | | | 03/01/2021 |
| | **7. Heating and Plumbing** | | | | | |
| 7.1 | Adequacy of Heating Equipment | ✓ | | | | 03/01/2021 |
| 7.2 | Safety of Heating Equipment | ✓ | | | | 03/01/2021 |
| 7.3 | Ventilation/Cooling | ✓ | | | | 03/01/2021 |
| 7.4 | Water Heater | ✓ | | | | 03/01/2021 |
| 7.5 | Approvable Water Supply | ✓ | | | | 03/01/2021 |
| 7.6 | Plumbing | ✓ | | | | 03/01/2021 |
| 7.7 | Sewer Connection | ✓ | | | | 03/01/2021 |
| | **8. General Health and Safety** | | | | | |
| 8.1 | Access to Unit | ✓ | | | | 03/01/2021 |
| 8.2 | Fire Exits | ✓ | | | | 03/01/2021 |
| 8.3 | Evidence of Infestation | ✓ | | | | 03/01/2021 |
| 8.4 | Garbage and Debris | ✓ | | | | 03/01/2021 |
| 8.5 | Refuse Disposal | ✓ | | | | 03/01/2021 |
| 8.6 | Interior Stairs and Commom Halls | ✓ | | | | 03/01/2021 |
| 8.7 | Other Interior Hazards | ✓ | | | | 03/01/2021 |
| 8.8 | Elevators | ✓ | | | | 03/01/2021 |
| 8.9 | Interior Air Quality | ✓ | | | | 03/01/2021 |
| 8.10 | Site and Neighborhood Conditions | ✓ | | | | 03/01/2021 |
| 8.11 | Lead-Based Paint: Owner's Certification | ✓ | | | ☐ Not Applicable | 03/01/2021 |

If the owner is required to correct any lead-based paint hazards at the property including deteriorated paint or other hazards identified by visual assessor, a certified lead-based paint risk assessor, or certified lead-based paint inspector, the PHA must obtain certification that the work has been done in accordance with all applicable requirements of 24 CFR Part 35. The Lead-Based Paint Owner Certification must be received by the PHA before the execution of the HAP contract or within the time period stated by the PHA in the owner HQS violation notice. Receipt of the completed and signed Lead-Based Paint Owner Certification signifies that all HQS lead-based paint requirements have been met and no re-inspection by the HQS inspector is required.

**C. Special Amenities** (Optional)

This Section is for optional use of the HA. It is designed to collect additional information about other positive features of the unit that may be present. Although the features listed below are not included in the Housing Quality Standards, the tenant and HA may wish to take them into consideration in decisions about renting the unit and the reasonableness of the rent.
Check/list any positive features found in relation to the unit.

**1. Living Room**

☐ High quality floors or wall coverings
☐ Working fireplace or stove
☐ Balcony, patio, deck, porch
☐ Special windows or doors
☐ Exceptional size relative to needs of family
☐ Other: (Specify)

**2. Kitchen**

☐ Dishwasher
☐ Separate freezer
☐ Garbage disposal
☐ Eating counter/breakfast nook
☐ Pantry or abundant shelving or cabinets
☐ Double oven/self cleaning oven, microwave
☐ Double sink
☐ High quality cabinets
☐ Abundant counter-top space
☐ Modern appliance(s)
☐ Exceptional size relative to needs of family
☐ Other: (Specify)

**3. Other Rooms Used for Living**

☐ High quality floors or wall coverings
☐ Working fireplace or stove
☐ Balcony, patio, deck, porch
☐ Special windows or doors
☐ Exceptional size relative to needs of family
☐ Other: (Specify)

**4. Bath**

☐ Special feature shower head
☐ Built-in heat lamp
☐ Large mirrors
☐ Glass door on shower/tub
☐ Separate dressing room
☐ Double sink or special lavatory
☐ Exceptional size relative to needs of family
☐ Other: (Specify)

**5. Overall Characteristics**

☐ Storm windows and doors
☐ Other forms of weatherization (e.g., insulation, weather stripping
☐ Screen doors or windows
☐ Good upkeep of grounds (i.e., site cleanliness, landscaping condition of lawn)
☐ Garage or parking facilities
☐ Driveway
☐ Large yard
☐ Good maintenance of building exterior
☐ Other: (Specify)

**6. Disabled Accessibility**

Unit is accessible to a particular disability.   ☐ Yes   ☐ No
Disability _____

**D. Questions to ask the Tenant** (Optional)

1. Does the owner make repairs when asked?   Yes ☐   No ☐
2. How many people live there? _____
3. How much money do you pay to the owner/agent for rent? $ _____
4. Do you pay for anything else? (specify) _____
5. Who owns the range and refrigerator?  (insert O = Owner or T = Tenant) Range _____   Refrigerator _____   Microwave _____
6. Is there anything else you want to tell us? (specify) Yes ☐   No ☐

**E. Inspection Summary/Comments** (Optional)

Provide a summary description of each item which resulted in a rating of "Fail" or "Pass with Comments."

| Tenant ID Number | Inspector | Date of Inspection (mm/dd/yyyy) | Address of Inspected Unit | | |
|---|---|---|---|---|---|
| 000002117 | Contract Inspector | 03/01/2021 | 33 Chickasaw Dr. | | |
| Type of Inspection | Initial ☑   Special ☐   Reinspection ☐ | | Jackson | TN | 38305 |

Item Number                     Reason for "Fail" or "Pass with Comments" Rating

Continued on additional page ☐ Yes      ☐ No

**Jackson** EXHIBIT 9
Housing Authority

| | |
|---|---|
| Mark Reid | 125 Preston St. • P. O. Box 3188 |
| Executive Director | Jackson, TN 38303-0188 |

Date: April 22, 2022

Picked up at JHA office on: April 25, 2022

Subject: Mandatory Termination of Assistance, Eviction [24 CFR 5.2005(c)(1)]

Dear Ms. Jessica Martin,

This letter informs you that HUD policy requires JHA to terminate the Section 8 HCV assistance when a family is in court eviction from a unit under the HCV Program. JHA policy states, "A family will be considered evicted if the family moves after a legal eviction order has been issued, whether or not physical enforcement of the order was necessary." This action is proceeded by the recent judgment in the case of the eviction court process filed by Better World concluded on April 4, 2022, granting Better World possession of the property and a money judgment for rent, late fees, any damages to the unit, and court cost. The balance owed to Better World is $2,829.79 (this is not the final balance) until Better World completes a walkthrough of the property to confirm no damages to the property beyond normal wear and tear. Under the Section 8 HCV Program, you are entitled to an informal hearing when a decision affects your benefits. However, certain factors affect your benefits where Section 8 is not required to give you an opportunity for an informal hearing. Unfortunately, HUD policy does not entitle you to an informal hearing because the factors in your case are between you and your landlord, concluded in the termination of your assistance.

Please be assured HUD policies and regulations have been executed meticulously and methodically with due diligence. If you have any questions, please don't hesitate to call.

Best Wishes,

Cassie Jones
Section 8 Eligibility & Occupancy Specialist



# Exhibit 1D

LEASE AGREEMENT

This agreement is made and entered into on this the 1st day of March, 2021, by and between Better World Enterprises, LLC, LESSOR, and Jessica Martin, LESSEE (S). LESSOR has this day leased to LESSEE (S) the said premises identified as 33 Chickasaw Drive, Jackson TN 38305 for a 12 month period beginning on March 1, 2021 and ending on February 28, 2022 for which the LESSEE (S) agrees to pay $985 monthly, beginning on the 1st day of March, 2021. In the case of more than one LESSEE, all LESSEES listed above are jointly and severally liable for ensuring all provisions of this lease are adhered to. No persons other than those appearing on and signing this lease, or approved in advance in writing by the LESSOR, are to be living on the premises. These premises are to be occupied only by Jessica Martin and her children: Karler Martin (11), Karon Martin (5) and Kyro Martin (newborn).

The rent will be due and payable on the 1st day of each month and is to be paid by mail to:
Better World Enterprises, LLC
PO Box 10475
Jackson, TN 38308
Rent payments can also be made directly to the LESSOR'S account at First Bank, or LESSEE can complete an auto-debit authorization form permitting LESSOR to electronically debit LESSEE (S)' checking or savings account for the full rent amount each month with no processing fee. All returned checks or electronic payments will have a $25.00 service charge. In addition, the LESSOR may demand all future payments to be in cash or by certified check or money order.

All rent must be paid by the fifth (5th) day of each month or there will be a late charge of ten per cent (10%) of the entire month's rent in addition to the rent due for the month. If rent is not paid by the 15th of the month, eviction proceedings will start on the 16th of the month. LESSEE (S) hereby waives any 30-day warning period or any other period and agrees to immediate eviction if rent is not paid by the 16th. LESSEE (S) agrees to pay all costs of eviction if rent is not paid by the 16th. Once eviction proceedings have started, a $250 reinstatement fee and all accrued rent, late fees and any other charges will be required for the LESSEE (S) to remain. A minimum collection fee of $250 is also due if LESSOR decides at any time that eviction proceedings must be filed to enforce or dissolve the lease. Payments are credited to applied first to amounts due in the current month, and then to the oldest outstanding amount, whether rent, late fee or reinstatement fee.

It is further agreed between the parties hereto that a failure of the LESSEE(S) to pay said rental in advance as herein provided or the breach of any other covenant of this rental contract shall entitle LESSOR to re-enter and take possession of said premises without further notice.

it is a condition of the tenancy of the LESSEE (S) that failure to pay the rent due hereafter on or before the due date shall, at the option of the LESSOR, forfeit the tenancy and the LESSOR shall have the right to declare the lease forfeited, to demand immediate payment of all rents due over the remainder of the term and to proceed with a detainer suit against the LESSEE (S) should the LESSEE (S) not vacate voluntarily.

The LESSEE (S) does hereby agree to pay all costs of collection, including a minimum of $250, reasonable attorney fees, if all or any part of the rent herein is collected after the due date with the aid of a rent collector or an attorney; also to pay reasonable attorney fees in the event it becomes necessary for the LESSOR to employ an attorney to force the LESSEE (S) to comply with any of the covenants, obligations or conditions imposed by this agreement. Acceptance of partial payment does not waive the LESSEE (S)' obligation to pay remaining balance.

In the event that LESSEE (S) must vacate the property prior to the end of the lease, LESSEE (S) is responsible for the rent until the property is rented again or until the lease expires, whichever occurs first. LESSEE(S) is responsible for any costs associated with re-renting the property, including referral fees if applicable and any difference in monthly rent required to promptly re-rent the property. In addition, a $200 early termination fee will be required.

It is specifically understood and agreed that either party shall have the right to terminate this contract after 12 months, provided written notice of such intention to terminate has been given at least thirty (30) days prior to the date of such termination. If LESSOR does not receive written notice 30 days prior to the lease termination, LESSEE will be responsible for the full monthly rent for each month until 30 days after notice is received at whatever the new rental

rate for the next 12 months will be. In the event LESSEE (S) vacates before the full term of this lease, he/she will be responsible for the rent until this lease expires or until the property is re-rented, whichever occurs first.

The LESSEE (S) shall not assign or sublet the premises nor any part thereof without the written consent of the LESSOR; and in no event shall the sub-letting or assignment of this agreement relieve the LESSEE (S) of any of the covenants, agreements and obligations of the LESSEE (S) in this agreement. LESSEE (S) agrees to abide by LESSOR's rules and regulations at all times, and any amendments thereto.

It is further understood and agreed that the LESSOR or any of their representatives shall have the right to inspect the above described property at reasonable times (Monday through Friday, 8am-6pm, Saturday 9a,-5pm) to ascertain its condition and shall have the right to show the property to prospective tenants and buyers, provided that said property is shown at reasonable times and under reasonable conditions. It is understood and agreed that the LESSOR shall be permitted to exhibit a "FOR RENT" sign on the property 30 days prior to lease expiration.

LESSEE (S) acknowledges that LESSEE (S) has examined the premises and finds same to be in a fit, habitable and clean condition. The property is being leased in an "As Is" condition. The LESSEE (S) shall preserve the leased premises, including fixtures and equipment therein, in as good condition as received by the LESSEE (S) except ordinary wear and tear, and for the said purpose the LESSEE (S) has deposited with the LESSOR the sum of $0. Deposit of $983 is due upon taking keys. At the expiration of the lease, the LESSOR shall refund the LESSEE (S) the amount of said deposit, less any proper deductions resulting from a breach of this lease agreement. The aforementioned deposit is not a part of the rental for said premises, but if the LESSEE (S) fails to comply with the terms and conditions of the lease, the LESSOR shall have the right to apply any remaining amount of said deposit once any damages have been repaired, toward the indebtedness due the LESSOR by the LESSEE (S), but such deposit will not be considered as liquidated damages for any breach of the terms of this lease. LESSEE(S) agrees that said security deposit be held without interest. LESSEE(S) agrees that said security deposit shall not be deducted from the last month's rent. Failure to return the premises in a clean condition will result in a cleaning charge, which at the LESSOR's option may be deducted from the LESSEE(S)'s security deposit. Security deposit is held in an account at First Bank, 11 Channing Way, Jackson, TN 38305.

LESSEE (S) covenants and agrees that at all times during the term, the premises shall be maintained in a good, clean and sanitary condition, free of trash and debris. The LESSEE (S) shall comply with local regulations concerning garbage service. All drains and waste pipes and plumbing are accepted as clear by the LESSEE (S) and any partial or complete stoppage during the tenancy shall be repaired by the LESSEE (S). Such repair must be performed by a reputable, licensed and bonded individual or company. Leaks in pipes, unless caused by the negligence of the LESSEE (S), are to be repaired by the LESSOR within a reasonable time after notice, but the LESSOR shall not be liable nor responsible for any damages resulting from any such leak or overflow. Cooking oil may NOT be dumped down the drains OR disposed of in the gardens or landscaping. It must be disposed of in the trash. LESSEE is responsible for the cost to clear drains or restore landscaping if oil is not properly disposed.

LESSEE (S) understands and agrees that it shall be the LESSEE (S)'s own obligation to insure the LESSEE (S)'s personal property located in the premises, and tenant further understands that the LESSOR will not reimburse the LESSEE (S) for damage to the LESSEE (S)'s property.

All electric, gas, sewer, water and trash collection charges on the leased premises are to be paid by LESSEE (S). Loss of utilities on the premises, whether by intentional disconnection or disconnection for non-payment, is considered breach of the lease and abandonment of the property, and entitles LESSOR to immediate repossession.

No locks are to be changed without the permission of the LESSOR. If locks are found to be changed, LESSOR has the irrevocable right to immediately enter the property and install new locks so that LESSOR has keys to the property, at LESSOR expense. Such expense will be taken from next payment from LESSEE makes, before payment is applied to any other amount due.

The property will not be used for illegal or immoral purposes.

IT IS SUGGETED THAT YOU CONTACT YOUR INSURANCE CARRIER IN REGARD TO INSURANCE ON YOUR PERSONAL BELONGINGS.  LESSOR'S INURANCE DOES NOT COVER DAMAGES TO LESSEE (S)' PERSONAL BELONGINGS.

RELEASE OF SECURITY DEPOSIT IS SUBJECT TO THE FOLLOWING:
1)  Full term of lease has expired.
2)  Notice was given in accordance with the lease.
3)  No damage to the property.
4)  All items included with the property as listed below are returned in good repair and in good working order.
5)  Entire premises have been cleaned including oven, range and vent, dishwasher, refrigerator, bath fixtures, cabinets & floors.
6)  No stickers, scratches or holes in walls, ceilings, bath fixtures or appliances.  Small holes are permitted.
7)  No indentations or scratches in wood cabinets or vinyl except ordinary wear and tear.
8)  No unpaid late charges or delinquent rents.
9)  No special spot cleaning of carpets or tears, stains, burns or any other damage except normal wear and tear.
10) All keys are returned.
11) All debris and rubbish and discards are carried away.
12) Lawn must be mowed and all gardens weeded and/or cleaned on single family homes and duplexes.
13) Forwarding address is left with LESSOR.

Security deposit will be refunded by check, mailed to the forwarding address, made payable to all persons signing the lease.

ITEMS INCLUDED WITH THE PROPERTY INCLUDE:
Ceiling light fixtures/fans in living room and bedroom
Stove/oven      Make:                    Model #:                    Serial #:
Refrigerator    Make: Frigidaire         Model #: FPES – 198D        Serial #:
Dishwasher      Make:                    Model #:                    Serial #:
Window blinds
Light bulbs

_____
_____
_____

I Jessia Martin have inspected these premises and hereby accept and agree to rent these premises "As Is".

_____      3/8/21
LESSEE                       Date

No smoking is permitted in the building or on the property, by LESSEE (S) or their guests. LESSEE will be responsible for all associated cleanup costs if LESSOR finds that there has been smoking in or on the property. This includes cleaning of all HVAC ductwork, repainting, recarpeting, etc. and can total thousands of dollars.

LESSEE (S) will keep the lawn and grass cut and the gardens maintained monthly, including weeding and trimming of bushes, as they were upon leasing on single family homes and duplexes. If lawn is not mowed, or gardens weeded or bushes trimmed within 2 days of LESSEE being requested by LESSOR to do so, by phone, voicemail, text or letter, LESSOR will do so at LESSOR's discretion for a charge of $75 per occurrence.

All vehicles on the premises are to be maintained in working condition and are to display current registration. Any vehicles not meeting this criteria are subject to immediate towing without prior notice. Vehicles may not be parked on the grass, walkways or other landscaping at any time.

LESSEE (S) understands that LESSOR does not furnish pest control other than a termite contract on the dwelling.

LESSEE (S) acknowledges that smoke detector is in place and is presently in good working order; battery replacement and functional monitoring of smoke detector is the sole responsibility of the LESSEE (S). Non-working smoke detectors are considered a breach of this agreement. Malfunctioning smoke detectors are to be immediately reported to the LESSOR. LESSEE (S) also acknowledges that a fully charged fire extinguisher is in place in the kitchen, and agrees to promptly recharge or replace it if used.

Replacement of batteries in remote control units, if any, is responsibility of the LESSEE (S).

Furnace filters are to be replaced by the LESSEE (S) at least four (4) times per year, or as needed. Damage to heating or air conditioning systems resulting from failure to replace filter as needed will be the responsibility of the LESSEE.

Absolutely no pets are to be allowed on or in the premises without written approval from the LESSOR. Dogs are accepted ONLY if they are registered service dogs, with papers, which must be provided in advance of bringing them onto the property. Dogs must be cleaned up after immediately and should be walked off the property. All pets must have current tags and vaccinations, as required by local regulations. Animals may not be left tied up or confined outside and unattended. All dogs must be on a leash at all times when outside. No more than 3 animals are allowed on the premises without written permission in advance from the LESSOR. The City of Jackson requires all cats and dogs over the age of 6 months to be spayed or neutered within 30 days of reaching 6 months of age, or to be issued a breeding permit ($20 per animal) each year. Proof of compliance is required before the animal(s) can be brought to the property.

No alterations or improvements (including applying paint and wallpaper) are to be made to the premises without the written permission of the LESSOR.

Absence from the property in excess of fourteen consecutive days requires advance notice to the LESSOR. Additionally, any guests of the LESSEE(S) staying longer than 14 consecutive days require acknowledgment and approval from the LESSOR.

This lease contains all of the agreements between the parties hereto, and it may not be modified except in writing and such modification must be signed by all the parties. The terms, covenants and conditions contained herein shall inure to the benefit of the parties hereto and shall be binding upon the LESSOR and LESSEE (S) and their respective successors and assigns.

AGREED AND APPROVED:

_Ann Ewing for_ ___ 3/1/21 ___ _____ 3/8/20
LESSOR Bwe, LLC          Date    LESSEE              Date
Better World Enterprises, LLC
PO Box 10475
Jackson, TN 38308
731-467-1244

_____  _____
                            LESSEE                    Date

# Exhibit 11

## LEASE AGREEMENT

This agreement is made and entered into on this the _10_ th day of _March_, 2021, by and between Better World Enterprises, LLC, LESSOR, and Jessica Martin, LESSEE (S). LESSOR has this day leased to LESSEE (S) the said premises identified as 33 Chickasaw Drive, Jackson TN 38305 for a 12 month period beginning on _March '10'_, 2021 and ending on _Feb-28th_ 2022 for which the LESSEE (S) agrees to pay $983 monthly, beginning on the _10_ th day of _March_, 2021. In the case of more than one LESSEE, all LESSEES listed above are jointly and severally liable for ensuring all provisions of this lease are adhered to. No persons other than those appearing on and signing this lease, or approved in advance in writing by the LESSOR, are to be living on the premises. These premises are to be occupied only by Jessica Martin and her children: Karler Martin (11), Karon Martin (5) and Kyro Martin (newborn).

The rent will be due and payable on the 1st day of each month and is to be paid by mail to:
Better World Enterprises, LLC
PO Box 10475
Jackson, TN 38308
Rent payments can also be made directly to the LESSOR'S account at First Bank, or LESSEE can complete an auto-debit authorization form permitting LESSOR to electronically debit LESSEE (S)' checking or savings account for the full rent amount each month with no processing fee. All returned checks or electronic payments will have a $25.00 service charge. In addition, the LESSOR may demand all future payments to be in cash or by certified check or money order.

All rent must be paid by the fifth (5th) day of each month or there will be a late charge of ten per cent (10%) of the entire month's rent in addition to the rent due for the month. If rent is not paid by the 15th of the month, eviction proceedings will start on the 16th of the month. LESSEE (S) hereby waives any 30-day warning period or any other period and agrees to immediate eviction if rent is not paid by the 16th. LESSEE (S) agrees to pay all costs of eviction if rent is not paid by the 16th. Once eviction proceedings have started, a $250 reinstatement fee and all accrued rent, late fees and any other charges will be required for the LESSEE (S) to remain. A minimum collection fee of $250 is also due if LESSOR decides at any time that eviction proceedings must be filed to enforce or dissolve the lease. Payments are credited to applied first to amounts due in the current month, and then to the oldest outstanding amount, whether rent, late fee or reinstatement fee.

It is further agreed between the parties hereto that a failure of the LESSEE(S) to pay said rental in advance as herein provided or the breach of any other covenant of this rental contract shall entitle LESSOR to re-enter and take possession of said premises without further notice.

It is a condition of the tenancy of the LESSEE (S) that failure to pay the rent due hereafter on or before the due date shall, at the option of the LESSOR, forfeit the tenancy and the LESSOR shall have the right to declare the lease forfeited, to demand immediate payment of all rents due over the remainder of the term and to proceed with a detainer suit against the LESSEE (S) should the LESSEE (S) not vacate voluntarily.

The LESSEE (S) does hereby agree to pay all costs of collection, including a minimum of $250, reasonable attorney fees, if all or any part of the rent herein is collected after the due date with the aid of a rent collector or an attorney; also to pay reasonable attorney fees in the event it becomes necessary for the LESSOR to employ an attorney to force the LESSEE (S) to comply with any of the covenants, obligations or conditions imposed by this agreement. Acceptance of partial payment does not waive the LESSEE (S)' obligation to pay remaining balance.

In the event that LESSEE (S) must vacate the property prior to the end of the lease, LESSEE (S) is responsible for the rent until the property is rented again or until the lease expires, whichever occurs first. LESSEE(S) is responsible for any costs associated with re-renting the property, including referral fees if applicable and any difference in monthly rent required to promptly re-rent the property. In addition, a $200 early termination fee will be required.

It is specifically understood and agreed that either party shall have the right to terminate this contract after 12 months, provided written notice of such intention to terminate has been given at least thirty (30) days prior to the date of such termination. If LESSOR does not receive written notice 30 days prior to the lease termination, LESSEE will be responsible for the full monthly rent for each month until 30 days after notice is received at whatever the new rental

rate for the next 12 months will be. In the event LESSEE (S) vacates before the full term of this lease, he/she will be responsible for the rent until this lease expires or until the property is re-rented, whichever occurs first.

The LESSEE (S) shall not assign or sublet the premises nor any part thereof without the written consent of the LESSOR; and in no event shall the sub-letting or assignment of this agreement relieve the LESSEE (S) of any of the covenants, agreements and obligations of the LESSEE (S) in this agreement. LESSEE (S) agrees to abide by LESSOR's rules and regulations at all times, and any amendments thereto.

It is further understood and agreed that the LESSOR or any of their representatives shall have the right to inspect the above described property at reasonable times (Monday through Friday, 8am-6pm, Saturday 9a,-5pm) to ascertain its condition and shall have the right to show the property to prospective tenants and buyers, provided that said property is shown at reasonable times and under reasonable conditions. It is understood and agreed that the LESSOR shall be permitted to exhibit a "FOR RENT" sign on the property 30 days prior to lease expiration.

LESSEE (S) acknowledges that LESSEE (S) has examined the premises and finds same to be in a fit, habitable and clean condition. The property is being leased in an "As Is" condition. The LESSEE (S) shall preserve the leased premises, including fixtures and equipment therein, in as good condition as received by the LESSEE (S) except ordinary wear and tear, and for the said purpose the LESSEE (S) has deposited with the LESSOR the sum of $0. Deposit of $983 is due upon taking keys. pAt the expiration of the lease, the LESSOR shall refund the LESSEE (S) the amount of said deposit, less any proper deductions resulting from a breach of this lease agreement. The aforementioned deposit is not a part of the rental for said premises, but if the LESSEE (S) fails to comply with the terms and conditions of the lease, the LESSOR shall have the right to apply any remaining amount of said deposit once any damages have been repaired, toward the indebtedness due the LESSOR by the LESSEE (S), but such deposit will not be considered as liquidated damages for any breach of the terms of this lease. LESSEE(S) agrees that said security deposit be held without interest. LESSEE(S) agrees that said security deposit shall not be deducted from the last month's rent. Failure to return the premises in a clean condition will result in a cleaning charge, which at the LESSOR's option may be deducted from the LESSEE(S)'s security deposit. Security deposit is held in an account at First Bank, 11 Channing Way, Jackson, TN 38305.

LESSEE (S) covenants and agrees that at all times during the term, the premises shall be maintained in a good, clean and sanitary condition, free of trash and debris. The LESSEE (S) shall comply with local regulations concerning garbage service. All drains and waste pipes and plumbing are accepted as clear by the LESSEE (S) and any partial or complete stoppage during the tenancy shall be repaired by the LESSEE (S). Such repair must be performed by a reputable, licensed and bonded individual or company. Leaks in pipes, unless caused by the negligence of the LESSEE (S), are to be repaired by the LESSOR within a reasonable time after notice, but the LESSOR shall not be liable nor responsible for any damages resulting from any such leak or overflow. Cooking oil may NOT be dumped down the drains OR disposed of in the gardens or landscaping. It must be disposed of in the trash. LESSEE is responsible for the cost to clear drains or restore landscaping if oil is not properly disposed.

LESSEE (S) understands and agrees that it shall be the LESSEE (S)'s own obligation to insure the LESSEE (S)'s personal property located in the premises, and tenant further understands that the LESSOR will not reimburse the LESSEE (S) for damage to the LESSEE (S)'s property.

All electric, gas, sewer, water and trash collection charges on the leased premises are to be paid by LESSEE (S). Loss of utilities on the premises, whether by intentional disconnection or disconnection for non-payment, is considered breach of the lease and abandonment of the property, and entitles LESSOR to immediate repossession.

No locks are to be changed without the permission of the LESSOR. If locks are found to be changed, LESSOR has the irrevocable right to immediately enter the property and install new locks so that LESSOR has keys to the property, at LESSEE expense. Such expense will be taken from next payment from LESSEE makes, before payment is applied to any other amount due.

The property will not be used for illegal or immoral purposes.

No smoking is permitted in the building or on the property, by LESSEE (S) or their guests.  LESSEE will be responsible for all associated cleanup costs if LESSOR finds that there has been smoking in or on the property.  This includes cleaning of all HVAC ductwork, repainting, recarpeting, etc. and can total thousands of dollars.

LESSEE (S) will keep the lawn and grass cut and the gardens maintained monthly, including weeding and trimming of bushes, as they were upon leasing on single family homes and duplexes.  If lawn is not mowed, or gardens weeded or bushes trimmed within 2 days of LESSEE being requested by LESSOR to do so, by phone, voicemail, text or letter, LESSOR will do so at LESSOR's discretion for a charge of $75 per occurrence.

All vehicles on the premises are to be maintained in working condition and are to display current registration.  Any vehicles not meeting this criteria are subject to immediate towing without prior notice.  Vehicles may not be parked on the grass, walkways or other landscaping at any time.

LESSEE (S) understands that LESSOR does not furnish pest control other than a termite contract on the dwelling.

LESSEE (S) acknowledges that smoke detector is in place and is presently in good working order; battery replacement and functional monitoring of smoke detector is the sole responsibility of the LESSEE (S).  Non-working smoke detectors are considered a breach of this agreement.  Malfunctioning smoke detectors are to be immediately reported to the LESSOR.  LESSEE (S) also acknowledges that a fully charged fire extinguisher is in place in the kitchen, and agrees to promptly recharge or replace it if used.

Replacement of batteries in remote control units, if any, is responsibility of the LESSEE (S).

Furnace filters are to be replaced by the LESSEE (S) at least four (4) times per year, or as needed.  Damage to heating or air conditioning systems resulting from failure to replace filter as needed will be the responsibility of the LESSEE.

Absolutely no pets are to be allowed on or in the premises without written approval from the LESSOR.  Dogs are accepted ONLY if they are registered service dogs, with papers, which must be provided in advance of bringing them onto the property.  Dogs must be cleaned up after immediately and should be walked off the property.  All pets must have current tags and vaccinations, as required by local regulations.  Animals may not be left tied up or confined outside and unattended.  All dogs must be on a leash at all times when outside.  No more than 3 animals are allowed on the premises without written permission in advance from the LESSOR.  The City of Jackson requires all cats and dogs over the age of 6 months to be spayed or neutered within 30 days of reaching 6 months of age, or to be issued a breeding permit ($20 per animal) each year.  Proof of compliance is required before the animal(s) can be brought to the property.

No alterations or improvements (including applying paint and wallpaper) are to be made to the premises without the written permission of the LESSOR.

Absence from the property in excess of fourteen consecutive days requires advance notice to the LESSOR.  Additionally, any guests of the LESSEE(S) staying longer than 14 consecutive days require acknowledgment and approval from the LESSOR.

This lease contains all of the agreements between the parties hereto, and it may not be modified except in writing and such modification must be signed by all the parties.  The terms, covenants and conditions contained herein shall inure to the benefit of the parties hereto and shall be binding upon the LESSOR and LESSEE (S) and their respective successors and assigns.

AGREED AND APPROVED:

_____   3/10/21   _____   3/10/21
LESSOR                    Date      LESSEE                     Date
Better World Enterprises, LLC
PO Box 10475
Jackson, TN  38308
731-467-1244              _____   _____
                         LESSEE                     Date

*Ann Ewing for*
*BWE, LLC*

IT IS SUGGESTED THAT YOU CONTACT YOUR INSURANCE CARRIER IN REGARD TO INSURANCE ON YOUR PERSONAL BELONGINGS.  LESSOR'S INURANCE DOES NOT COVER DAMAGES TO LESSEE (S)' PERSONAL BELONGINGS.

RELEASE OF SECURITY DEPOSIT IS SUBJECT TO THE FOLLOWING:
1) Full term of lease has expired.
2) Notice was given in accordance with the lease.
3) No damage to the property.
4) All items included with the property as listed below are returned in good repair and in good working order.
5) Entire premises have been cleaned including oven, range and vent, dishwasher, refrigerator, bath fixtures, cabinets & floors.
6) No stickers, scratches or holes in walls, ceilings, bath fixtures or appliances.  Small holes are permitted.
7) No indentations or scratches in wood cabinets or vinyl except ordinary wear and tear.
8) No unpaid late charges or delinquent rents.
9) No special spot cleaning of carpets or tears, stains, burns or any other damage except normal wear and tear.
10) All keys are returned.
11) All debris and rubbish and discards are carried away.
12) Lawn must be mowed and all gardens weeded and/or cleaned on single family homes and duplexes.
13) Forwarding address is left with LESSOR.

Security deposit will be refunded by check, mailed to the forwarding address, made payable to all persons signing the lease.


ITEMS INCLUDED WITH THE PROPERTY INCLUDE:
Ceiling light fixtures/fans in living room and bedroom
Stove/oven       Make:              Model #:              Serial #:
Refrigerator     Make:              Model #:              Serial #:
Dishwasher       Make:              Model #:              Serial #:
Window blinds
Light bulbs

_____
_____
_____

I, _____, have inspected these premises and hereby accept and agree to rent these premises "As Is".

_____        _____
LESSEE                          Date