IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

---

JESSICA MARTIN, et al.,

    Plaintiffs,

v.                                                      No. 1:23-cv-01018-STA-jay

JACKSON HOUSING AUTHORITY,

    Defendant.

---

JESSICA MARTIN, et al.,

    Plaintiffs,

v.                                                      No. 1:23-cv-01019-STA-jay

BETTER WORLD PROPERTIES, LLC, and
ANN EWING,

    Defendants.

---

## REPORT AND RECOMMENDATION

Plaintiff Jessica Martin, on behalf of herself and her three minor children, filed pro se Complaints in both above-referenced matters in January 2023. *Martin v. Jackson Housing Authority*, 1:23-cv-01018-STA-jay, ECF No. 1 (hereinafter *Jackson Housing*); *Martin v. Better World Properties, LLC*, 1:23-cv-01019-STA-jay, ECF No. 1 (hereinafter *Better World*). These cases have been referred to the United States Magistrate Judge for management of all pretrial matters and for determination and/or report and recommendation as appropriate. Admin. Order 2013-05. Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court is required to conduct a screening of

the Complaint because Plaintiff sought and received in forma pauperis status in both matters. *Jackson Housing*, ECF No. 8; *Better World*, ECF No. 7.

Upon initial review of both Complaints, the Court determined that the Complaints failed to comply with Rule 8 of the Federal Rules of Civil Procedure and therefore ordered Plaintiff to file Amended Complaints in both suits. *Jackson Housing*, ECF No. 9; *Better World*, ECF No. 8. Plaintiff filed her Amended Complaints. *Jackson Housing*, ECF No. 10; *Better World*, ECF No. 9. Based on the following analysis, the undersigned **RECOMMENDS DISMISSING** the following claims in both cases: generalized discrimination, Coronavirus Aid Relief, and Economic Security (CARES) Act violations, breach of contract, and fraud. However, the undersigned **RECOMMENDS** allowing Plaintiff's procedural due process claim against Jackson Housing Authority (JHA) in Case No. 1:23-cv-01018-STA-jay to proceed.

## I. PROPOSED FINDING OF FACT AND PLAINTIFFS' CLAIMS

Plaintiff's Amended Complaints allege the following facts that are pertinent to her claims.[1] Plaintiff Jessica Martin and Defendant Better World Properties entered into a lease agreement. ECF No. 10 at 1. The original lease agreement was signed on March 1, 2021. ECF No. 10 at 1. Plaintiff sought and received Section 8 housing assistance. ECF No. 10-1 at 8. Due to an apparent delay in the housing inspection process required by JHA, the lease agreement had to be re-signed on March 10, 2021. ECF No. 10 at 1.

The following January, Plaintiff received notice from Defendant Better World Properties that the lease would not be renewed "due to the cost of wood . . . ." ECF No. 10 at 1. Plaintiff

---

[1] The Amended Complaints filed in both cases are identical. The Amended Complaint in *Jackson Housing* is found at docket entry ten, while the Amended Complaint in *Better World* is found at docket entry nine. For ease of reference, the Court will only cite to the Amended Complaint found at docket entry ten in *Jackson Housing*. However, the page and paragraph number references will be the same as the Amended Complaint in *Better World*. Additionally, in the ninety-four pages filed for each Amended Complaint, there are quite a number of conclusory statements as well as extraneous information. The Court recites here only those facts that are pertinent to the claims it appears Plaintiff is raising.

alleges that the property is "still being rented under Section 8" and that the decision to not renew her lease "seems a little bias[ed]." ECF No. 10 at 1.

Plaintiff allegedly sought an "Administrative Hearing" with a Section 8 Eligibility & Occupancy Specialist, Ms. Jones, on January 17, 2022. ECF No. 10 at 1; ECF No. 10-1 at 23. Apparently, Defendant Ewing, on behalf of Better World Properties, communicated with Ms. Jones as well. Defendant Ewing informed Ms. Jones that although Plaintiff was current on rent in January 2022, the company would not be renewing the lease. ECF No. 10 at 1. As such, the lease would end on February 28, 2022. ECF No. 10 at 1. Plaintiff contends the lease should not have terminated until March 10, 2022. ECF No. 10 at 1.

Despite these notifications that Defendant Better World would not renew the lease, Plaintiff sent a money order to pay for March 2022's rent. ECF No. 10 at 2. Because Plaintiff had not vacated the property at the end of the lease, Defendant Better World filed an eviction notice against Plaintiff. ECF No. 10 at 2. Defendant Ewing notified Ms. Jones on March 4, 2022, that a notice of eviction had been filed against Plaintiff. ECF No. 10 at 2. Plaintiff filed counter claims against Defendant Better World in the state court proceeding for "wrongful eviction, perjury under oath, and defamation of character . . . ." ECF No. 10 at 2. The state court did not "merge[] the cases together," so Plaintiff proceeded in a separate action. ECF No. 10 at 2. The state court awarded judgment in favor of Defendant Better World in the eviction action on April 4, 2022. ECF No. 10 at 2. Plaintiff argues this eviction was in violation of the CARES Act. ECF No. 10 at 2.

On April 6, 2022, Plaintiff was informed that she was not eligible to transfer (port) her Section 8 eligibility elsewhere "until all fees from the courts were paid." ECF No. 10 at 2. Then, on April 13, 2022, Plaintiff was notified that she was "terminated off the Section 8 program." ECF No. 10 at 2. By April 19, 2022, law enforcement informed Plaintiff of an order requiring her to

3

"vacate the residence." ECF No. 10 at 2. Ms. Jones delivered a termination letter to Plaintiff on April 22, 2022, which removed her from the Section 8 housing program. ECF No. 10 at 2.

Plaintiff then traveled to Washington, D.C.; after a series of contacts with housing assistance program representatives there, Plaintiff returned to Tennessee. ECF No. 10 at 3. Plaintiff alleges that she was eligible for portability of her Section 8 voucher, but because she was "lied to" regarding the requirement that all court fees be paid, the portability window had closed. ECF No. 10 at 3. Plaintiff then pursued two state-court actions which were, apparently, unsuccessful. ECF No. 10 at 3.

Plaintiff's Amended Complaints include multiple Exhibits, several of which are worth reviewing here. There are two lease agreements. ECF No. 10-1 at 2-7. The first indicates a rental period "beginning on March 1, 2021 and ending on February 28, 2022 . . . ." ECF No. 10-1 at 2. The second indicates a rental period "beginning on March 10, 2021," but the end date is scratched out, re-written, and undecipherable to the Court. ECF No. 10-1 at 6. What is clear, is that the date scratched out is "Feb 28." ECF No. 10-1 at 6. It appears as though the amended end date for the lease period is some time in March. ECF No. 10-1 at 6.

Another filing shows on January 11, 2022, Defendant Ewing sent an e-mail to Ms. Jones to "confirm" that Plaintiff was sent notice on December 30, 2021, that the lease would not be renewed. ECF No. 10-1 at 12. Instead, the lease would end on February 28, 2022. ECF No. 10-1 at 12. The justification provided was that the Defendants' costs had "significantly increased" and that the proposed $50 increase in Plaintiff's rent would be insufficient. ECF No. 10-1 at 12. Apparently, several tenants received non-renewal notices. ECF No. 10-1 at 12.

Then, on March 4, 2022, Defendant Ewing sent Ms. Jones an e-mail stating that "[Plaintiff] has refused to vacate" the rental property. ECF No. 10-2 at 7. Defendant Ewing also informed Ms.

4

Jones that Defendant Better World filed for eviction and based on the proposed court date, requested a pro-rated monetary judgment for rental fees and late fees. ECF No. 10-2 at 7.

On April 25, 2022, Plaintiff obtained notice that the United States Department of Housing and Urban Development (HUD) "policy requires JHA to terminate the Section 8 [Housing Choice Voucher (HCV)] assistance when a family is in court eviction from a unit under the HCV Program." ECF No. 10-1 at 23. The notice states that because a judgment of eviction, along with a money judgment of at least $2,829.79, was awarded to Defendant Better World, Plaintiff was subject to a mandatory termination of assistance. ECF No. 10-1 at 23. The notice also stated that:

> Under the Section 8 HCV Program, you are entitled to an informal hearing when a decision affects your benefits. However, certain factors affect your benefits where Section 8 is not required to give you an opportunity for an informal hearing. Unfortunately, HUD policy does not entitle you to an informal hearing because the factors in your case are between you and your landlord, concluded [sic] in the termination of your assistance.

ECF No. 10-1 at 23.[2]

On May 23, 2022, Plaintiff sent an e-mail to eight individuals, to include Ms. Jones and another JHA employee. ECF No. 10-1 at 11. The e-mail's subject line reads, "REQUIRED ADMINISTRATIVE HEARING." ECF No. 10-1 at 11. The body of the e-mail states that Plaintiff

---

[2] JHA's letter cited to 24 CFR 5.2005(c)(1). This provision outlines additional protections for victims of domestic violence. Subsection 5.2005(c)(1) specifically states that an:

> incident of actual or threatened domestic violence, dating violence, sexual assault, or stalking shall not be construed as:
>  (1) A serious or repeated violation of a lease executed under a covered housing program by the victim or threatened victim of such incident; or
>  (2) Good cause for terminating the assistance, tenancy, or occupancy rights under a covered housing program of the victim or threatened victim of such incident.
>
> 24 CFR 5.2005(c)(1).

None of the facts before the Court indicate that Plaintiff was a victim or threatened victim of domestic violence, dating violence, sexual assault or stalking. Therefore, it appears to the Court that this provision is inapplicable to Plaintiff. Moreover, Plaintiff never cites to these heightened protections as justification as to how or why her eviction was wrongful. The Court will therefore not consider this provision to be applicable in Plaintiff's case.

requested her "REQUIRED administrative hearing pursuant to (42 USC 1437(d)k) [sic]." ECF No. 10-1 at 11. Attached to the e-mail is a PDF document with the title "96-7060." ECF No. 10-1 at 11.

To summarize, the facts are as such: Plaintiff and Defendant Better World entered into a lease agreement sometime in March of 2021. Defendant Better World notified Plaintiff prior to the expiration of the lease that the agreement would not be renewed for the following year. Defendant Better World maintained that the lease terminated on February 28, 2022, while Plaintiff avers that the lease terminated at a later date, due to the delayed inspection process resulting in the lease agreement not being signed until March 10, 2021. Regardless, Plaintiff did not vacate the property on February 28, 2022. Therefore, Defendant Better World sought an eviction order, and the state court entered an order of eviction against Plaintiff. After the eviction order was entered, JHA terminated Plaintiff's housing assistance. On the facts before the Court, it appears as though JHA did *not* hold a termination of benefits hearing.

The Court reads the Amended Complaints to raise the following causes of action: (1) some type of discrimination claim on the part of Defendant Better World for the decision to not renew Plaintiff's lease; (2) a procedural due process violation on the part of JHA for not holding an administrative hearing regarding Plaintiff's housing assistance termination; (3) a violation of the CARES Act on the part of Defendant Better World; (4) breach of contract regarding the date the lease agreement terminated with Defendant Better World; and (5) fraud.

Finally, Plaintiff requests the following relief:

> Jessica Martin and family would like to seek counseling, $45,000,000, a Federal Bill Passed [sic] that no family will be evicted and left homeless during a pandemic to be exposed or left in harms way, 350 newly brand new built single family units in Jackson, Tennessee and Jessica would like to oversee the project.

ECF No. 10-1 at 1.

## II. PROPOSED CONCLUSIONS OF LAW

### A. SCREENING STANDARDS

The Court is required to screen in forma pauperis complaints and to dismiss any complaint, or any portion thereof, if the action:

(i) is frivolous or malicious;
(ii) fails to state a claim on which relief may be granted; or
(iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

In assessing whether the Complaint in this case states a claim on which relief may be granted, the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 667-79, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009), and in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57, 127 S. Ct. 1955, 1964-66, 167 L. Ed. 2d 929 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681, 129 S. Ct. at 1951) (alteration in original). "[P]leadings that are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 681, 129 S. Ct. at 1950; *see also Twombly*, 550 U.S. at 555 n.3, 127 S. Ct. at 1964-65 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"Pro se complaints are to be held 'to less stringent standards than formal pleadings drafted

by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). Pro se litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), *reh'g denied* (Jan. 19, 1990); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Secretary of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming sua sponte dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231, 124 S. Ct. 2441, 2446, 159 L. Ed. 2d 338 (2004) ("District judges have no obligation to act as counsel or paralegal to pro se litigants.").

Under § 1915(e)(2)(B), the Court has the discretion to refuse to accept allegations in a complaint that are "clearly baseless," a term encompassing claims that may be described as "fanciful, fantastic, delusional, wholly incredible, or irrational." *Bumpas v. Corr. Corp. of America,* No. 3:10–1055, 2011 WL 3841674, at *8 (M.D. Tenn. Aug. 30, 2011) (citing *Denton v. Hernandez,* 504 U.S. 25, 32–33 (1992)). Furthermore, "a district court may, at any time, sua sponte dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn,* 183 F.3d 477, 479 (6th Cir. 1999).

### B. JURISDICTION

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.,* 511

U.S. 375, 377 (1994). Litigants must establish that the court has subject matter jurisdiction over their claims through federal question jurisdiction, diversity jurisdiction, or supplemental jurisdiction. 28 U.S.C. § 1331–1332; 28 U.S.C. § 1367. Federal question jurisdiction is present when a party asserts a cause of action arising under the United States Constitution or a federal statute. 28 U.S.C. § 1331. Diversity jurisdiction is present when there is "complete diversity [of citizenship] between all plaintiffs and all defendants" and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332; *Lincoln Prop. Co. v. Roche,* 546 U.S. 81, 84 (2005). A party's citizenship is determined by their domicile. *Stifel v. Hopkins*, 477 F.2d 1116, 11260 (6th Cir. 1973). A corporation is a citizen of "every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business . . . ." 28 U.S.C. § 1332(c)(1).

Finally, a federal court may exercise supplemental jurisdiction over claims it does not otherwise have jurisdiction to hear independently. *Exxon Mobil Corp. v. Allapattah Servs*., 545 U.S. 546, 559 (2005). Supplemental jurisdiction is available where there is at least one claim over which the court has subject matter jurisdiction and the supplemental claim constitutes part of the same "case or controversy." 28 U.S.C. § 1367(a). The court "may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Where a federal court dismisses the underlying federal law claims, the court "should not ordinarily reach the plaintiff's state-law claims." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006). Retaining jurisdiction over state law claims once the federal claims are dismissed "should be exercised only in cases where the 'interests of judicial economy and the avoidance of multiplicity of litigation' outweigh . . . concern[s] over 'needlessly deciding state law issues.'" *Moon*, 465 F.3d at 728 (quoting *Landefeld v. Marion Gen. Hosp., Inc*., 994 F.2d 1178, 1182 (6th Cir. 1993).

## III. ANALYSIS

### A. DISCRIMINATION

The Fair Housing Act (FHA) allows a private party to bring "a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice[.]" 42 U.S.C. § 3613. Under the FHA it is unlawful to "refuse to . . . rent . . . or to refuse to negotiate for the . . . rental of . . . a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a).

Plaintiff here has failed to plead any facts that make a plausible showing of discrimination under the FHA. Plaintiff, at most, states that Defendant Better World's decision to not renew the lease was "a little bias[ed]." ECF No. 10 at ¶ 6. However, Plaintiff did not give the Court *any* information regarding which type of discrimination she may have suffered. Was it race or national origin discrimination? Familial status or gender-based discrimination? Plaintiff needed to provide more than a conclusory statement of bias in order to proceed. Absent any facts about what Defendants may have done or said to lead Plaintiff to believe she was discriminated against, and on what basis, the Court cannot find that Plaintiff has stated a plausible claim. The undersigned therefore RECOMMENDS DISMISSING Plaintiff's FHA discrimination claim.

### B. PROCEDURAL DUE PROCESS VIOLATION

Subsection 1983 provides a statutory cause of action against "[e]very person who . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. Local housing authorities are "subject to suit under 42 U.S.C. § 1983 as a local government entity." *Mattox v. United States*, No. 19-2155-MSN-dkv, 2019 U.S. Dist. LEXIS 159687, at *6 (W.D.

10

Tenn. Aug. 26, 2019). In order to "'demonstrate municipal liability, [a plaintiff] must (1) identify the municipal policy or custom, (2) connect the policy to municipality, and (3) show that [the plaintiff's] particular injury was incurred due to execution of that policy.'" *Mattox*, 2019 U.S. Dist. LEXIS 159687, at *6 (quoting *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)).

The Fourteenth Amendment protects against procedural due process violations. U.S. CONST. amend. XIV. A procedural due process claim requires a plaintiff to:

> establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest.

*Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999).

In the context of housing assistance determinations, there is "sufficient governmental action . . . to invoke the constitutional protection of due process" regarding a property interest. *Davis v. Mansfield Metro. Housing Auth.*, 751 F.2d 180, 184 (6th Cir. 1984). As it relates to "present participants in the program" the Sixth Circuit has held "that due process requires a hearing prior to termination" of housing assistance benefits. *Davis*, 751 F.2d at 185.[3] Even where a housing authority decides to terminate a contract with a property owner, there is a "Constitutionally-protected property interest" in the leases held by program beneficiaries. *Alms Residents Ass'n v. United States HUD*, 2017 U.S. Dist. LEXIS 168842, at *30 (S.D. Ohio Oct. 12,

---

[3] In *Davis*, the Sixth Circuit delineated the process due between two types of plaintiffs in that case: those that were denied housing assistance in the initial application process and those that were denied housing assistance after having already been admitted into the housing assistance program. There, the Court noted that "the nature of the interest of the present participants necessitates somewhat more extensive procedures than those required for applicants." *Davis*, 751 F.2d at 185. To be clear, the "present participants" at issue in that case were denied recertification due to "outstanding claim[s]" against them. *Id*. at 183. The Court noted this was "effectively terminating [the plaintiffs'] participation in the Section Eight program." *Id*. In short, the undersigned believes that the termination decision here, apparently based on an eviction proceeding, is a distinction without a difference absent more information from JHA regarding the underlying justification for Plaintiff's termination from the program.

2017). In *Alms*, the court noted that the tenants were not technically in contractual privity between the housing authority and the housing provider. *Alms*, 2017 U.S. Dis.t LEXIS 168842, at *30. Despite that, the court held that the tenants had a due process right to a hearing *prior* to the housing authority terminating its contract because the leases would "terminate[] automatically . . . ." *Id.* at *30-31.[4] In short, there is a preference in this area for *pre*deprivation process.

The Code of Federal Regulations establishes when an informal hearing is required for a program participant. Under 24 CFR 982.555, there are two categories of informal hearings: mandatory and permissive. Subsection 982.555(a) provides the list of situations in which a public housing authority (PHA) "*must* give a participant family an opportunity for an informal hearing . . . ." 24 CFR 982.555(a) (emphasis added). That list includes a "determination to terminate assistance for a participant family because of the family's action or failure to act (see § 982.552)." 24 CFR 982.555(a)(1)(iv). Moreover, the informal hearing for this type of termination must be held "before the PHA terminates housing assistance payments for the family under an outstanding . . . contract." 24 CFR 982.555(a)(2). The hearing procedure requirements are then detailed in 24 CFR 982.555(e).

Under § 982.552(b)(2), a PHA "must terminate program assistance for a family evicted from housing assisted under the program for serious violation of the lease." 24 CFR 982.552(b)(2). Although this language is mandatory in terms of terminating assistance, it is not without reference to an informal hearing requirement. Subsection 982.552(d)(3) notes that the "PHA must give the family a written description of . . . [t]he PHA informal hearing procedures." 24 CFR § 982.552(d)(3).

---

[4] HUD's argument that the program participants received due the process due to them because they were present at a meeting two months *after* HUD terminated its contract with the property owner was "not well-taken" by the court. *Id*. at *30-31.

12

Importantly, even though the regulations indicate that a PHA *must* terminate assistance to program participants under certain conditions, the regulations do *not* indicate that such mandatory termination may take place without an informal hearing. The Court has struggled to find a single case in which a court found a beneficiary's procedural due process rights were met *without* an informal hearing. For example, in *Davis v. Mansfield Metropolitan Housing Authority*, the Sixth Circuit determined that the PHA's failure to have an informal hearing in light of recertification denials violated the procedural due process rights of program participants. *Davis*, 751 F.2d at 183-84. The recertification denials in that case were for "outstanding claims" against the participants. *Id*. at 183. Then, in *Caswell v. City of Detroit Housing Commission*, the Sixth Circuit considered a plaintiff's procedural due process claim in light of a termination of benefits due to state eviction proceedings. 418 F.3d 615, 617 (6th Cir.). The *Caswell* Court ultimately found the plaintiff's procedural due process rights were not violated, but that was because he was (1) afforded a pre-termination hearing, and (2) at the hearing was able to "conduct discovery, present evidence, cross-examine witnesses, and be represented by counsel . . . ." *Id*. at 621.

The question, then, is whether Plaintiff has met the plausibility standard in establishing she was not afforded the due process rights owed to her in the housing assistance context. First, Plaintiff had a property interest in her housing benefits. Second, Plaintiff's housing benefits were terminated. Third, it appears as though the benefits were terminated without a pre-deprivation hearing. Finally, it appears as though JHA denied Plaintiff's request for a hearing because the issues in Plaintiff's housing were "between [Plaintiff] and [Plaintiffs'] landlord . . . ." ECF No. 10-1 at 23. Such a statement evinces a plausible JHA policy to terminate housing benefits without a pre-deprivation hearing when a dispute between a landlord and a Section 8 tenant results in eviction. While this policy is not explicitly outlined—and there may be facts later raised by JHA

13

that illustrates a different sequence of events—the Court finds Plaintiff's Amended Complaints and attached documentation has reached the threshold of plausibility. The Court therefore finds that Plaintiff has stated a plausible claim for a procedural due process violation against JHA. Because Defendants Better World and Ann Ewing are not state actors, the Court RECOMMENDS DISMISSING the procedural due process claim raised against them in the *Better World* case.

### C. CARES ACT

Plaintiff claims that on March 4, 2022, Defendant Better World "filed an eviction against Jessica and family because of non-payment of rent and failure to vacate property . . . during the Covid Pandemic" and that such a proceeding violated "the Cares [sic] Act Eviction Moratorium [which] protected citizens from eviction." ECF No. 10 at ¶ 12.

It is true that at the height of the COVID-19 pandemic, Congress passed a bevy of emergency protections for citizens, to include an eviction moratorium that initially expired on July 25, 2020. *Tiger Lilly, LLC v. United States HUD*, 992 F.3d 518, 520 (6th Cir.). The moratorium was extended until January 31, 2021. *Tiger Lilly*, 992 F.3d at 521. Just before that moratorium expired, "the CDC Director issued a new directive extending the [eviction moratorium] through March 31, 2021." *Id*. The Sixth Circuit held such a move fell "outside the scope of the statute" the CDC relied on in issuing the moratorium. *Id*. at 523.

By August 26, 2021, the Supreme Court agreed and held that such a moratorium exceeded the CDC's statutory grant of authority. *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2489 (2021). As such, the Court held that "[i]f a federally imposed eviction moratorium is to continue, Congress must specifically authorize it." *Ala. Ass'n of Realtors*, 141 S. Ct. at 2490. Congress did not do so.

Therefore, federal action to prevent evictions due to the COVID-19 pandemic ceased to be effective in August of 2021. Plaintiff was subject to eviction proceedings starting in March of 2022.

As such, there was no federal eviction moratorium in place at the time Plaintiff was evicted. The undersigned therefore finds Plaintiff has failed to state a plausible claim and RECOMMENDS DISMISSING Plaintiff's CARES Act claim.

### D. BREACH OF CONTRACT

Plaintiff claims that the lease agreement entered into with Defendant Better World was "tampered" with and breached. ECF No. 10 at ¶ 1. The Court reads Plaintiff's Complaint to allege that Defendants Better World and Ann Ewing represented to the state court, and to JHA, that the lease agreement terminated on February 28, 2022. ECF No. 10 at ¶¶ 1-2, 5. According to Plaintiff, because of the delayed inspection, the lease agreement was not signed until March 10, 2021, and thus the lease agreement did not end until one year later. ECF No. 10 at ¶ 1; ECF No. 10-1 at 6-7.

The Court finds there is no jurisdiction as to this claim. First, this is not a federal question. Second, the amount in controversy requirement has not been met for diversity jurisdiction. The parties appear to be diverse citizens. Defendant Better World's address is listed in Jackson, Tennessee; Defendant Ann Ewing appears to work for Defendant Better World, likely in Jackson, Tennessee. ECF No. 10-1 at 7. Plaintiffs currently reside in Georgia, according to the address provided to the Clerk's Office.[5]

Plaintiffs' monetary damages include a request for $45 million. ECF No. 10-1 at 1. While this certainly exceeds the $75,000 amount-in-controversy requirement, the undersigned finds that such an amount is not requested in good faith.

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. *It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal*.

---

[5] However, the mail sent to Plaintiffs at that address has been returned as undeliverable. ECF No. 11.

*Kovacs v. Chesley*, 406 F.3d 393, 395 (6th Cir. 2005) (emphasis in original) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938)).

Plaintiff's Amended Complaint includes a letter from Ms. Jones to Plaintiff, which reads that the state court granted Defendant Better World "possession of the property and a money judgment for rent, late fees, any damages to the unit, and court cost[s]." ECF No. 10-1 at 23. The sum of money damages reported by Ms. Jones was $2,829.79, exclusive of any damages reported by Better World after "a walkthrough of the property . . . ." ECF No. 10-1 at 23. Plaintiff also filed a document with the Amended Complaint showing a total of $175.91 paid "to file [a] counter claim[.]" ECF No. 10-1 at 14; ECF No. 10 at ¶ 14.

Adding these expressly pled amounts together, the total is $3,005.70. The Court is willing to hypothesize, given Plaintiff's pro se status, that there are costs for the change in medication and apparent move out of state that Plaintiff did not include. ECF No. 10 at 2. The Court is also willing to consider a sum of money for emotional damages related to the alleged breach of contract that precipitated the eviction. However, the Court is struggling to find a good faith argument that such a sum comes remotely close to $45 million.[6]

Next, even if the Court decides to find the jurisdictional amount-in-controversy is met and there is jurisdiction over this claim, the undersigned finds the breach of contract claim is subject to issue preclusion, otherwise known as res judicata.[7] Applying Tennessee law on this doctrine, "a court will bar a claim if that claim was 'definitively settled by [a prior] judicial decision' (a final

---

[6] The Court also notes that beyond monetary damages, the relief Plaintiff seeks is unavailable to her in this Court. First, the Court cannot order Congress to pass a federal bill regarding evictions. ECF No. 10-1 at 1. Nor can the Court order the State of Tennessee or the City of Jackson to allocate the funds necessary to build "single family units" in Jackson. ECF No. 10-1 at 1. Finally, even if the state or city were inclined to embark on such a housing development project, the Court most certainly cannot mandate who must "oversee the project[.]" ECF No. 10-1 at 1. These remedies are also unavailable for a jury to award.

[7] The Court notes here that Plaintiff does not specify what her claim raised in state court was. Otherwise, if she brought a breach of contract claim in state court, claim preclusion may apply. Therefore, the Court will only address issue preclusion.

16

judgment on the merits)." *Elam v. Aurora Servs. Loan, LLC*, No. 2:17-cv-02188-TLP-tmp, 2018 U.S. Dist. LEXIS 75477, at * 3 (W.D. Tenn. May 2, 2018) (alteration in original) (quoting *Res Judicata*, BLACKS' LAW DICTIONARY (10th ed. 2014)). Issue preclusion, specifically, will prevent a party from relitigating those "issue[s] of fact or law [that are] actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Elam*, 2:17-cv-02188-TLP-tmp, 2018 U.S. Dist. LEXIS 75477, at * 4-5 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27).

    Here, Plaintiff included a copy of the detainer summons and state court judgment entered by Judge Christy Little. ECF No. 10-2 at 5. First, the document notes the state court case was between Better World Properties and Jessica Martin, thus the parties in that proceeding are the same parties to this case. ECF No. 10-2 at 5. Second, the summons notes that the "right to possession [of the property] has now terminated because of non-payment of rent and failure to vacate at end of lease (2/28/22)." ECF No. 10-2 at 5. The judgment entered in favor of Better World was for $2,592.60 plus possession of the property.[8] ECF No. 10-2 at 5. In short, it appears as though Judge Little has already determined that the lease agreement between Plaintiff Jessica Martin and Defendant Better World did, in fact, end on February 28, 2022. Plaintiff now tries to claim that there was a breach of contract, and that the lease terminated at a later date. Because the end date of the lease agreement between Defendant Better World and Plaintiff was already decided in the state court eviction proceedings, the issue is now precluded.

---

[8] The discrepancy for the amount itemized in the letter from JHA to Plaintiff Jessica Martin and the amount itemized in the judgment can be accounted for by the fact the amount listed in the judgment was exclusive of costs for the suit. ECF No. 10-2 at 5. However, such costs were awarded in favor of Better World. ECF No. 10-2 at 5.

For all the aforementioned reasons, the undersigned RECOMMENDS DISMISSING this claim. Finally, because JHA was not a party to the lease agreement, the Court also RECOMMENDS DISMISSING any breach of contract claim raised against JHA.

### E. FRAUD

At best, the Court reads Plaintiff's Amended Complaint to allege that during the eviction proceedings in state court, Defendant Better World Properties committed some type of fraud. ECF No. 10 at ¶ 29. The Federal Rules of Civil Procedure imposes a heightened pleading standard for fraud claims. FED. R. CIV. P. 9(b). Federal Rule of Civil Procedure 9(b) requires a party to "state with particularity the circumstances constituting fraud . . . ." FED. R. CIV. P. 9(b). The heightened pleading standard requires a plaintiff "(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012).

Although Plaintiff generally includes that the alleged fraud is attributable to Defendant Better World, and generally took place during the state court eviction proceedings, Plaintiff utterly fails to indicate what statement(s) was fraudulent and what made it fraudulent. As such, Plaintiff has not met the heightened pleading requirements and the undersigned RECOMMENDS DISMISSING this claim.

### IV. CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS allowing Plaintiff's procedural due process claim to proceed against Defendant Jackson Housing Authority. The undersigned further RECOMMENDS DISMISSING all remaining claims brought against

18

Defendant Jackson Housing Authority, and Defendants Better World Properties, LLC, and Ann Ewing.

Respectfully submitted, this the 19th day of October, 2023.

s/Jon A. York
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT AND RECOMMENDATION MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT AND RECOMMENDATION. 28 U.S.C. § 636(b)(1). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**